[L. A. No. 1322.   In Bank.—December 24, 1904.]

MALVINA BAILLARGE, Appellant, v. E. P. CLARK, Respondent.

ACTION TO QUIET TITLE—UNDELIVERED DEED—WRONGFUL POSSESSION—BONA FIDE PURCHASER—IMPROVEMENTS—EQUITABLE ESTOPPEL.—A wife who executed and acknowledged a deed of her separate property to her husband, and retained the same without delivery, is equitably estopped to deny the delivery and to claim the premises in an action to quiet title against a *bona fide* purchaser deriving title through her husband, who wrongfully obtained possession of the deed and sold the property, where it appears that, instead of promptly repudiating the act of her husband, she, with full knowledge of the facts, allowed such purchaser to make permanent im-

provements upon the property, without notice of her claim thereto prior to the commencement of the action, which was brought nearly three years after acquiring such knowledge.

ID.—PRINCIPLES OF EQUITABLE ESTOPPEL.—Although the title was not operative in the husband for want of delivery of the deed to him by the wife, the equitable estoppel of the wife to deny the delivery as against the *bona fide* grantee of the husband rests upon the maxims that "He who can and does not forbid that which is done in his behalf is deemed to have bidden it," and that "Where one of two innocent persons must suffer, he through whose agency the loss occurred must sustain it," and upon the rule that "It is unconscionable for a party to permit another to improve the property obtained in such a bargain and then claim the property and improvements, even were he to pay the costs of the improvements."

APPEAL from a judgment of the Superior Court of Los Angeles County. D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Adcock & Reymert, for Appellant.

A stolen deed undelivered cannot impart title to the grantee. (*Gould* v. *Wise,* 97 Cal. 232; *Everts* v. *Agnes,* 6 Wis. 453; *Meley* v. *Collins,* 41 Cal. 663.[1]) Purchasers from the husband were bound to inquire whether or not there was a breach by the husband of his confidential relation toward his wife. (*McDougall* v. *McDougall,* 135 Cal. 316; *Stiles* v. *Cain,* 134 Cal. 170; *Sheehan* v. *Sullivan,* 126 Cal. 192; *White* v. *Warren,* 120 Cal. 324; *Tillaux* v. *Tillaux,* 115 Cal. 670; *Dimond* v. *Sanderson,* 103 Cal. 97.) The facts do not show an equitable estoppel. (*Davis* v. *Davis,* 26 Cal. 23.[2])

John D. Pope, for Respondent.

A married woman may be estopped by her conduct as to a conveyance of her separate estate. (*Ramboz* v. *Stowell,* 103 Cal. 588.) The facts created an equitable estoppel to deny delivery of the deed. (*Quick* v. *Milligan,* 108 Ind. 419,[3] and authorities there cited; *Murphy* v. *Ganey,* 23 Utah, 633.)

VAN DYKE, J.—This is an appeal from a judgment entered in favor of the defendant upon the judgment-roll. The action is to quiet title to a strip of land described as lots num-

[1] 10 Am. Rep. 279.　　　　　[3] 58 Am. Rep. 49.
[2] 85 Am. Dec. 157.

bers 55 and 56 in block Q of the Santa Monica Commercial Company tract, in the town of Santa Monica.

The court below found that the plaintiff and Maurice Baillarge were husband and wife at the time the said Santa Monica Commercial Company conveyed the premises in dispute to the plaintiff as her separate estate, in 1893.

On August 7, 1897, the plaintiff and her husband went before a notary public in Santa Monica to draw their wills, when, upon representations of the notary in reference to the expense of probating a will, they concluded to have mutual deeds executed, one to the other, of the tract of land including the premises in controversy. Thereupon, deeds in the form of grant, bargain, and sale, for a nominal consideration, were prepared and executed, the one to the other. After said deeds were signed and acknowledged, the one in which the plaintiff was grantee was handed to her by the notary, and she thereupon gave the notary the deed and directed him to place the same on record, and the deed executed by plaintiff to her husband, after being acknowledged, was by the notary thereupon immediately handed back to the plaintiff. Two days thereafter, on August 9th, plaintiff departed from Los Angeles County, and went to the dominion of Canada. Prior to her departure she had packed two trunks, in one of which she had placed the deed from herself to her said husband, together with articles of wearing apparel, and gave said trunks to her husband to be checked as baggage, but on account of excess in weight he checked only one of said trunks, leaving the one in which said deed had been placed. And during the time that the plaintiff was on a visit to Canada, Maurice Baillarge, without her knowledge or consent, took the deed of plaintiff to him from the trunk, and, claiming to be the owner of the property therein described, on September 9, 1898, for a valuable consideration, conveyed the property mentioned in the complaint to one W. F. Nordholt; that thereupon said Nordholt filed said deed so executed to himself, and also the deed from the plaintiff to his grantor, Maurice Baillarge, (which had not prior thereto been recorded,) for record in the county of Los Angeles. The said Nordholt did not search the records or cause the records of said county to be searched, and made the purchase solely upon the representation of said Maurice Baillarge that he was the owner of said property. Thereafter,

on October 26, 1898, Nordholt sold and conveyed the premises in question by grant, bargain, and sale deed, to A. I. Smith, for the consideration of six hundred dollars, fifty dollars paid in cash, and a promissory note given for five hundred and fifty dollars, payable in six months after date. Said deed was recorded November 2, 1898, in the records of Los Angeles County. On December 2, 1898, said Smith conveyed said premises to E. P. Clark, the defendant, by grant, bargain, and sale deed, the grantee therein paying Smith fifty dollars cash and agreeing to pay the note of Smith to Nordholt, which he subsequently did; that said deed was thereupon recorded December 5, 1898, in the records of Los Angeles County. The purchase of the premises in question was made by Smith and Clark, and the conveyance was taken by them for the benefit of the Los Angeles Pacific Railroad Company, of which company the defendant, Clark, is the principal manager and director, and said company immediately upon the execution of the deed to Smith entered into possession of the said premises, laid its track across the same, and afterwards, and for six months, continued to make improvements upon said premises in such manner as to use them for a place for repairing and cleaning cars. The said improvements were made at different times during the six months after taking possession of said premises, and aggregated in amount five hundred dollars.

Plaintiff paid the taxes upon the premises in dispute that were due and payable prior to the first Monday in March, 1899, and defendant paid the taxes on behalf of the Los Angeles Pacific Railroad Company thereafter.

"Plaintiff returned from her visit to Canada on the 5th day of November, 1898, and was informed on that day that Maurice Baillarge, her husband, had abstracted the deed from her to him from her said trunk and had conveyed the premises to Nordholt, and that Nordholt had transferred the said premises to Smith, for the Los Angeles Pacific Railroad Company, and that the railroad company had entered into the possession thereof and laid its tracks thereon, and that the said railroad company was using the same as its property; and that no notice (except such notice, if any, as the above facts impart) was given by plaintiff to defendant, or by defendant to plaintiff, or the Los Angeles Pacific Railroad Com-

pany, or to any one for them, or either cr any of them, of their claim or rights in and to the property in dispute (except such knowledge and notice, if any, as is given and imparted by the facts aforesaid) until the commencement of this action.

"Neither W. F. Nordholt nor A. I. Smith, nor defendant E. P. Clark, nor the Los Angeles Pacific Railroad Company, had any knowledge or notice until the commencement of this action (unless the facts in the previous findings stated impart notice) that plaintiff was the owner, or claimed to own, or had any interest in the premises in dispute.''

From these facts so found the court rendered judgment in favor of the defendant.

The contention on the part of the appellant is, that the deed from the plaintiff to her husband, Maurice Baillarge, was never delivered, and therefore never became operative as a conveyance. The respondent, on the other hand, replies that, admitting the deed was never delivered so as to take effect between the parties thereto, from the facts found by the court the plaintiff is estopped, and the judgment in favor of the defendant should be affirmed; and in this we think the respondent is correct.

It is found that Nordholt received the deed from the appellant's husband to the premises in dispute September 9, 1898, and conveyed the premises to Smith October 26, 1898, and that ten days thereafter appellant returned from Canada, and was then informed that the deed had been taken from her trunk, and that her husband had made the conveyance in question, and that nearly a month thereafter Smith conveyed to the defendant Clark, for the benefit of the railroad company, as stated, which company had entered into possession and commenced making improvements thereon, which continued six months thereafter and aggregated five hundred dollars; that the plaintiff gave no notice whatever, nor made any indication of her claim to the property until the commencement of the action, nearly three years after her return from Canada, and after being informed of the whole transaction.

If the plaintiff did not approve of the transaction on the part of her husband, it was her duty, when informed of the same, to promptly repudiate what had been done by her husband in the premises. Instead, however, it appears that no notice whatever was given or steps taken to inform the de-

fendant that she disapproved of the transaction until the
commencement of the action, nearly three years after becom-
ing acquainted with all the facts.

It is laid down as one of the maxims of the law that ''He
who can and does not forbid that which is done on his behalf
is deemed to have bidden it.'' (Civ. Code, sec. 3519.) In
*Quick* v. *Milligan*, 108 Ind. 419,[1] the appellant, in conjunction
with her husband, signed and acknowledged a conveyance of
her interest in the land in question to one Etchison, and sent
such conveyance to her sister, with instructions to deliver it
only upon the condition that he pay the amount of the pur-
chase money in question. In violation of these instructions,.
however, the sister delivered the deed to the grantee named
in it, without the payment of the purchase money. In that
case, it was contended, on behalf of the plaintiff, that the
deed, having been delivered in violation of the condition im-
posed by the said plaintiff, did not become effective. The
court, after admitting to the full extent the abstract propo-
sition as stated to be correct,—that a deed delivered in escrow
is not effective if placed in the hands of the grantee in viola-
tion of a condition upon which the person who holds in escrow
is authorized to deliver it,—however, decided the case against
the appellant and in favor of the defendant, the purchaser
from Etchison, on the ground of estoppel,—to wit, that where
one of two innocent persons must suffer he through whose
agency the loss occurred must sustain it (citing a number of
authorities to that effect).

In *Beardsley* v. *Clem*, 137 Cal. 328, the plaintiffs owned a
tract of land near Redlands, and the defendants owned a tract
near Downey, and exchanged deeds for the same on December
1, 1898, in pursuance of a verbal agreement previously en-
tered into. On the night of November 30, 1898, a house which
stood on defendants' land was destroyed by fire, but it was
found that at the time the deeds were exchanged the parties
believed that the dwelling was on the land; that the existence
of the dwelling-house was an inducement to the plaintiffs and
a part of the consideration moving to them in the transaction,
and that had plaintiffs known of the destruction of the house
they would not have made the exchange. On December 19th
plaintiffs served notice of a rescission and demanded a recon-

---

[1] 58 Am. Rep. 49.

veyance, but prior to that time, and after the exchange of the deeds, defendants had placed permanent improvements on the land taken by them of the value of three hundred and fifty-nine dollars, and expended eighteen dollars for cultivating and irrigating said lands, and forty dollars paid to the plaintiffs' intestate and one of the parties who made the exchange, for fertilizing material left on the premises conveyed to the defendants. The court below held, that, although the plaintiffs had the right to rescind in view of the mutual mistake, they were yet estopped by subsequent conduct; that the acts and conduct of plaintiffs' intestate indicated that he did not intend to rescind, and rather encouraged the defendants in the work performed and expenditures made, adding, "These things created an equitable estoppel, because it is unconscionable for a party to permit another to so improve property obtained in such a bargain, and then claim the property and improvements, even were he to pay the costs of the improvements"; and this court, after citing a number of authorities bearing upon the question of estoppel, affirmed the judgment.

In *Alexander* v. *Welcker*, 141 Cal. 302, the note and mortgage sued on were executed by the defendant (appellant) and her husband (W. T. Welcker) in his lifetime—the title to the mortgaged premises being in the appellant alone. The court finds that after executing the mortgage with her husband she exacted a promise from him as to the delivery of the note and mortgage at the time she intrusted the same to him, but that he never at any time informed the mortgagees (under whom plaintiff claimed) of the promise he had made to defendant, and they had no notice or knowledge thereof. It was contended in that case by the appellant, as here, that there was no legal delivery of the mortgage to the mortgagees. This court, however, in the opinion affirming the judgment, says: "Under the circumstances the appellant is clearly estopped from denying the delivery of the mortgage."

The reasons for the application of the old rule of equitable estoppel are equally as cogent in the case at bar.

Judgment affirmed.

Beatty, C. J., Lorigan, J., Henshaw, J., Shaw, J., and Angellotti, J., concurred.

Rehearing denied.