THE UNION PACIFIC RAILROAD COMPANY V.
O. L. THISLER.

No. 16,120.

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Stock on Right of Way—Evidence of Negligence.* Where in an action against a railroad company for horses killed on the track there was evidence tending to show that the engineer (whose engine was running forty-five miles an hour) must have seen the animals a quarter of a mile away, if they were then on the track, a finding that he did see them at this distance is supported by testimony of a witness that the appearance of manure and tracks of the horses between the rails indicated that they had stood for some time at the point where they were struck.

Error from Dickinson district court; OSCAR L. MOORE, judge. Opinion filed July 3, 1909. Affirmed.

*R. W. Blair, H. A. Scandrett,* and *B. W. Scandrett,* for the plaintiff in error.

*E. C. Little,* for the defendant in error; *Pollock & Little,* and *S. S. Smith,* of counsel.

The opinion of the court was delivered by

MASON, J.: O. L. Thisler recovered a judgment against the Union Pacific Railroad Company on account of four colts having been killed at night by one of its passenger-trains, and the company prosecutes error. The animals were found to have gone upon the track under such circumstances that the defendant was relieved of liability unless its employees saw them in a place of danger soon enough to have prevented the accident by the exercise of ordinary diligence. The jury, however, in answer to a special interrogatory, said that the engineer saw them in time so that by the exercise of reasonable care he could have stopped the train before striking them, and the only question that need be considered is whether there was any evidence to support this finding.

The engineer testified that when the collision occurred he was looking straight ahead up the track, and had been doing so for some time, but that he did not see the animals at all because of a dense fog, and only knew that he had struck them by feeling a hard jar; that on a clear night the headlight would light the track for a distance of "from four to six telegraph poles," or 660 to 990 feet, and that the train was running forty-five miles an hour. On the other hand the plaintiff introduced evidence that there was no fog, that the track was straight for three-quarters of a mile each way from the place of the accident, that no signal was given as this point was approached, that the speed of the train was not slackened, and that the headlight enabled one to see in advance of the engine with plainness for a distance of 1200 to 1500 feet—that it lit up the track for fully half a mile. Under these circumstances the jury might have been led to believe from the evidence that when the engine reached a point 1200 to 1500 feet from the spot where the colts were killed the engineer was looking ahead, that the track was visible

for that distance, and that therefore he necessarily saw the animals at that time, *if they were then on the track,* and that notwithstanding this he neither blew the whistle, rang the bell, slackened speed, nor attempted to stop the train. The point at issue, therefore, narrows down to this: Was there any evidence from which it could be inferred that the colts were on the track at that time? If so it is to be found in the testimony of a witness who said that he saw the tracks of the colts where they had come to the track at the point where they were struck, and where they had stood upon it and deposited their manure there. On cross-examination he was asked whether the appearances indicated that they had been there for some time. He answered in the affirmative. Manifestly the quantity of manure and the number of footprints might enable an observer to form some reasonable estimate of the time the animals had stood in one spot—to the extent at least of judging whether or not their stay was merely momentary. If, as may have been the case, four sets of horse tracks were to be seen leading to a place between the rails, and none, leading from it, and at that point the footprints were too numerous to have been made within a short time, the inference was not only natural but inevitable that the animals had been standing there for a considerable period just before they were struck. The witness was not asked to state what the appearances at the scene of the accident were, but whether they indicated that the colts had been on the track for some time. His affirmative answer was none the less evidence of the fact testified to because all the details on which he based his opinion were not drawn out. While his statement could not be regarded as an attempt to estimate definitely how long the colts had stood between the rails, it obviously was meant to convey the idea that they had been there for some considerable time—that is seemingly the only meaning that can be attributed to it—and under the circumstances the jury may reasonably have

interpreted the expression "some time" as meaning longer at least than the brief interval (about twenty seconds) that elapsed while the train was running the last 1200 to 1500 feet before striking the animals. So interpreted the testimony bridged the gap in the evidence and gave a basis for the jury to find that as the colts were on the track when the engine was substantially a quarter of a mile away, and the headlight made them plainly visible, and the engineer was looking straight ahead, he must have seen them at that distance, and, therefore, in time to have prevented the collision.

The judgment is affirmed.

PORTER, J. (dissenting) : There was no affirmative testimony that the engineer saw the colts in time to have avoided the injury. The jury came to the rescue of the plaintiff and obligingly found as a fact that he did see them in time to have stopped the train. There was no testimony as to what position the colts were in or where they were immediately before they were struck. No fact was proved from which a jury could rightfully infer that the animals were in a position of danger long enough for those in charge of the train to have seen them and prevented the injury. Thirty minutes had elapsed from the time the colts left the enclosure and went upon the right of way before the train passed. How much of this time they occupied in going the one-half mile distance is conjecture. Of course, it took them "some time" to make a few tracks and deposit some manure on the right of way, but how long a time can only be surmised. The jury assumed that after the colts had done these things they continued to stay on the track until the train came, and therefore the engineer must have seen them; but this likewise is only conjecture. The train was running fifty miles an hour; it was twenty-five miles away when the colts first got on the right of way, and may have been ten miles away when the tracks were made and the manure deposited. The colts may afterward have gone to the side of the

Jefferson County v. Oskaloosa.

right of way and become frightened by the headlight and crossed the track directly in front of the engine. There was no proof of the actual facts. The animals got on the right of way through the negligence of their owner in refusing to close the gates which the railway company had erected to guard the right of way. The accident occurred at night. The railway company had the right to operate its trains at fifty or even seventy-five miles an hour or any other rate it saw fit, and was not obliged to keep on the lookout for trespassing animals. Before the plaintiff could recover he was obliged to prove by a preponderance of the evidence that those in charge of the engine saw the animals in a position of danger in time to have prevented the injury. The only way this fact could have been found by the jury was by mere speculation, conjecture and surmise, and therefore, in my opinion, a verdict for the defendant should have been ordered.

BURCH, J., dissenting.