WARREN MACOMBER v. ORRIN D. KINNEY and Others.[1]

December 2, 1910.

Nos. 16,808—(71,72[2] 26)[3].

**Estoppel.**

Entry was made on certain lands by plaintiff, "Warren Macomber," in 1880. In 1881 one "Warren McComber" conveyed lands to one Fink. In 1882 a patent was issued to Warren Macomber. A jury found that Warren Macomber did not execute and deliver the deed to Fink. Plaintiff originally spelled his last name "Macomber," but spelled it "McComber" since 1883. His father made a similar change in the spelling of his last name. In 1892 the discrepancy between the name of the grantee in the patent and the grantor in the Fink deed was discovered, and knowledge of it brought to plaintiff. Defendant Henry obtained title to his land through the Kinney deed prior to this knowledge by plaintiff. Defendants Alworth and others obtained title subsequent to this knowledge by plaintiff. Plaintiff remained silent, and took no action with respect to his title. The land was vacant and unoccupied. Plaintiff practically abandoned his title. Defendants Alworth and others used the land as owners. It is *held:*

It is settled, under the law of estoppel:

1. That defense avails in law and in equity alike.

2. The conduct of the party estopped may consist of a negative omission to speak or act when it was his duty to speak or act.

 . 3. Knowledge by the party estopped is sufficiently shown if the circumstances are such that knowledge of the truth is necessarily imputed to him.

---

[1] Reported in 128 N. W. 1001, 130 N. W. 851.     [3] April, 1911, term calendar.
[2] October, 1910, term calendar.

4. It is not necessary that the party estopped conduct himself with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct occurred under such circumstances that he should have known that it was both natural and probable that it would be so acted upon to another's prejudice.

5. The circumstances must have been such as to have imposed on the party sought to be estopped the duty of speaking or acting, and to have afforded him an opportunity so to do.

6. Estoppel can be invoked only by the innocent. Negligence may deprive of its protection. The truth must have been unknown to the party invoking it when he acted.

7. The conduct must have been relied upon by the party misled, and, thus relying, he must have been led to act upon it, and he must in fact act upon it in such a manner as to change his position for the worse.

**Same — against silent holder of interest in land.**

One who is in possession of land, or who has recorded his title, is ordinarily under no obligation to speak or take any action concerning a defect in his title. But if one not in possession has an interest in land which does not appear on record, fails to disclose it, and stands by and suffers the estate to be sold and improved with knowledge that the title had been mistaken, he will not be allowed to assert his claim against the purchaser. Gregg v. Von Phul, 1 Wall. 274, followed and applied. Viele v. Judson, 82 N. Y. 32, and Wiser v. Lawler, 189 U. S. 260, distinguished.

**Spelling of grantor's name — negligence.**

Under the circumstances of this case, defendants were not negligent in failing to discover the discrepancy arising from the spelling of the names "Macomber" and "McComber," which were idem sonans. As to defendants Alworth and others, plaintiff was estopped from asserting his adverse title.

**Laches.**

As to defendant Henry, plaintiff was under no duty to assert his adverse title. He was not barred by laches.

**Names — idem sonans.**

No matter how names are spelled, if the attentive ear finds difficulty in distinguishing them when pronounced, or common and long-continued usage has by corruption or abbreviation made them identical in pronunciation, they are "idem sonans."

Action in the district court for St. Louis county against Orrin D. Kinney, Marshall H. Alworth, Robert L. Henry and seven other defendants to determine adverse claims to a certain quarter section of

land. The complaint alleged that plaintiff was the patentee from the government under a patent which was recorded in the office of the register of deeds in 1884; that he had never conveyed away his rights in the land, and was therefore the owner in fee thereof.

The defendants answered separately and each set up that Warren Macomber, after the issue of the final receiver's receipt, about February 17, 1881, conveyed the land by deed with full covenants of warranty to Michael Fink and through the latter defendants became owners in fee simple of undivided interests therein in the land or in specified parts thereof. The court allowed an amendment to each answer which alleged that plaintiff had been a resident of St. Louis county at all times since February 17, 1881; that on that date a deed from the patentee of the land to one Fink was filed for record in the office of the register of deeds of that county; that the record title to the land remained in said Fink and in his grantees and was in the defendants in the proportions set out in their several answers; "that relying upon said record title the holders thereof down to and including these defendants have expended large sums of money upon said lands in the exploration, improvement and development thereof, and in the purchase thereof; that plaintiff has during all of said time exercised no acts of ownership over said lands, has not paid the taxes thereon, or in any manner claimed to be the owner thereof, as these defendants are informed and believe, until at or about the time of the institution of this action, and that these defendants, and the persons through whom they claim title, have at all times been ignorant of any claim of title made to said lands by the said plaintiff until at or about the time of the institution of this action; that plaintiff by his conduct has abandoned said lands, and is now as against these defendants, estopped to assert any claim or title thereto."

The reply specifically alleged on oath that plaintiff never signed, executed or acknowledged the deed mentioned in the answers nor any other deed or conveyance of the land to Michael Fink as grantee or otherwise, and the signature to that instrument was not that of plaintiff, was not authorized by him and was spurious and forged,

and admitted that plaintiff had been a resident of the county as alleged.

Dibell, J., submitted to a jury the question whether the plaintiff, Warren Macomber, executed the deed referred to in the answers and the jury answered "No." The case was then heard by the court on the issues not submitted to the jury and the court filed findings of fact substantially as stated in the first ten paragraphs of the opinion, and as conclusions of law found that plaintiff was the owner and entitled to the possession of an undivided one-third interest in certain parts of the quarter section and to an undivided five-eighteenths of the remainder; that defendant Alworth was the owner and entitled to an undivided one-third interest in the quarter; that defendant Kinney was the owner and entitled to an undivided one-third interest in parts of the land; and that defendant Harrison was entitled to an undivided one-ninth interest in part of the land; that defendant Henry was entitled to a lien upon the undivided interest of plaintiff in the sum of $62.80 and defendant Casson was entitled to an undivided one-eighteenth interest in part of the land.

From so much of the judgment entered pursuant to the findings as quieted title against plaintiff in any part of the quarter section, plaintiff appealed. From so much of the judgment as quieted title against defendants Kinney, Henry, and Harrison in any part of the quarter section, they appealed. Affirmed.

*J. B. Richards* and *Daniel G. Cash,* for plaintiff.

*Washburn, Bailey & Mitchell* and *Francis H. DeGroat,* for defendants.

JAGGARD, J.

The United States government issued to plaintiff, Warren Macomber, on May 20, 1882, a patent, which was recorded in the office of the register of deeds on February 13, 1884, pursuant to a pre-emption cash entry recorded in said register of deeds office on December 2, 1880. On February 17, 1881, an instrument bearing the same date was recorded in said register's office, whereby Warren McComber purported to convey the land described as the northeast quarter of section 29, township 50 north, of range 14, in St. Louis county,

Minnesota, to one Michael Fink. These lands were practically vacant and unoccupied. A jury has answered the question: "Did the plaintiff, Warren Macomber, execute and deliver the deed [to Fink]?" "No." At the time of the issuance of the final receipt and patent, and of said deed to Fink, plaintiff was a single man, residing with his father. The father originally spelled his name "Macomber," but since not later than January 5, 1881, he had at all times up to the time of trial spelled his last name "McComber." Plaintiff spelled his last name "McComber" since not later than September, 1883. Plaintiff and his family were well known at their place of residence, Duluth, in this state. Plaintiff lived within a few blocks of Fink, and employed one of Fink's daughters in his greenhouse.

Through various mesne conveyances by the grantees of Fink and his wife, the property came to defendants and respondents. For present purposes these defendants may be regarded as of two classes. One class will be treated as represented by defendant Henry, who acquired title prior to 1892, and transferred it, so that by mesne conveyances it came to defendant Casson, and defendants Alworth and Kinney, who acquired title subsequent to 1892. The significance of this year will subsequently appear.

The lands were heavily timbered with pine and were logged by Fink's grantees and the timber removed during the winters of 1885 and 1886. In 1891 Henry and others filed a plat of "Mesaba First Division," laid out on the southeast quarter of the northeast quarter of section 29. In 1888 Fink's grantee explored said land, or a part thereof, for iron ore. A notice of lis pendens was filed in an action brought against a subvendee of Fink to compel the specific performance of an agreement to convey to the plaintiff in said action.

Prior to making his final proof, plaintiff went on said land occupied by Fink and others, pursuant to an arrangement made for plaintiff by his father, and stayed there for a few days. Plaintiff never went on said land thereafter, or at any time; nor did any one go on there for him and on his behalf prior to 1894, or thereafter. Nor did plaintiff examine said land for timber, nor did he have an estimate made of the timber thereon, nor did he pay nor cause to be paid any taxes thereon prior to the beginning of this action.

The said land was located about sixty miles north of Duluth, upon what is now known as the Mesabe Iron Range. Beginning about 1888, interest was aroused over the discovery of iron ore in the vicinity of the land in question. A railroad was built in the general region in which these lands were located prior to 1891, running across or near this land, and a station built thereon immediately adjacent to the northeast quarter of the land. Exploration work in the vicinity was done. A village of one thousand or fifteen hundred people grew up near the land, and test pits were built by a grantee of Fink; some buildings being on the quarter section here involved. Five buildings, one of them occupied, were located thereon at the time of trial, which appear to have been there since about 1892. Plaintiff, an intelligent business man, had been familiar in a general way with the developments in the iron country that had been going on in this vicinity. In 1892 one John G. Williams, in examining the record title of the said land, discovered an apparent discrepancy between the spelling of the name Macomber in the patent to the land and in the Fink deed, and called upon plaintiff, who then spelled his name McComber, to sign a quitclaim deed to said land. This plaintiff declined to do.

Plaintiff thereupon secured an abstract of title, consisting of twenty-four numbers, nineteen of which were subsequent to the Fink deed, showing inter alia, judgment in the action previously referred to, and that the title to the land was in defendants in that action. Plaintiff, in looking over the abstract, consulted attorneys, and knew and understood that the title to the land appeared by the record thereof to have passed by the Fink deed to the grantee therein, and by mesne conveyances to other grantees, and knew that other persons were likely to rely on said record, and to purchase said land and expend money thereon in reliance on said record. About June 1, 1903, plaintiff procured an extension of said abstract, which showed thirty-four additional numbers and seven numbers omitted from the first abstract.

"This action was brought in October, 1906; and plaintiff did not at any time prior thereto in any manner give notice of any nature to these defendants, or to any possible purchasers, of his claim to

said land, or of his claim that the said Fink deed was invalid; and none of these defendants, at any time prior to the bringing of this action, had any knowledge or notice thereof." "Beginning with the year 1894, 1895, or 1896, he made visits to said land once or twice a year, omitting one or two years, but did not take possession thereof, or exercise any acts of ownership thereof, and never at any time in any manner interfered with the work of exploration, of cutting timber, or of building houses that was going on on said land."

Plaintiff retained possession of the abstract, showing on its face that the record title to said land was in various grantees, many of whom were well-known business men in Duluth, some of whom were indirectly customers of plaintiff at his greenhouse. The defendant Henry lived in Chicago, Illinois. The deed running to Fink disappeared in connection with a fire.

Alworth purchased an undivided one-third of the lands at public sale under a voluntary assignment of a grantee through the Fink deed. He caused his title to be examined by a leader of the bar of this state, who gave a written opinion covering the title, based on an abstract thereof, in which he advised that the title was well vested in the assignee from whom Alworth purchased, subject to the incumbrances of certain judgments mentioned. Alworth had no knowledge or notice at any time until 1906 of any claim to the title of said lands by plaintiff. Subsequent to Kinney's purchase [of an undivided one-third interest in the land] in 1900, he (Kinney) paid out, in addition to the consideration of the deed, considerable sums of money for clearing up certain judgments, after an examination and approval of the title by a well-known lawyer in Duluth. Subsequent to the purchase by defendants Alworth and Kinney, they, together with defendants Henry and Harrison, expended approximately $3,500 in causing explorations to be made on said lands. All taxes on these lands paid by defendants, and all sums they expended on the lands in connection with said explorations, were paid in reliance upon the record title and in the belief that it was good. Defendant Henry paid taxes to the amount of $62.80.

The trial court found these facts substantially, and specified the respective interests of the parties plaintiff and defendant. It also

found "that the plaintiff is by his acts and conduct estopped to claim title to an undivided two-thirds interest of said land as against the defendants Alworth, Kinney, St. Louis Land Company, and Harrison, that the plaintiff is not estopped to claim the title to the one-third interest in said land which stood in the name of defendant Henry in 1892, except an undivided one-eighteenth thereof." Defendant Henry, it was found, was entitled to a lien on the interest claimed by him in the sum of $62.80 taxes paid by him. Plaintiff appealed from the judgment entered accordingly, so far as Alworth and others were concerned. Defendant Henry appealed from the holding so far as it affected him.

The facts so found by the trial court must be regarded as true for present purposes. No transcript of the testimony appears in the record. The usual presumption of the finding of facts by the trial court controls.

1. The first controversy presented by the record concerns the propriety of the holding of the trial court that as to Alworth and others the plaintiff was estopped from asserting title. Plaintiff's contention is this: That estoppel rested on the mere silence or inaction of plaintiff. The plaintiff had in no wise made any active misrepresentations. Alworth and those whose title was of the same kind did not claim that they were induced to purchase or expend money in reliance on any word or conduct of plaintiff. The state of the records was a sufficient warning to the general public, and of itself showed that he owed no especial duty to the public or to any particular person to take any step to clear his title or in any wise to protect his interest. The law makes no provision for filing or recording of declarations of title, or of claims to title, nor of affidavits as to forgery. Nobody relied on plaintiff's silence or was misled by it. On the contrary, defendants clearly appear to have relied on the record, and on the attorney's opinion that the title was valid. In consequence it is insisted that plaintiff was not estopped.

Plaintiff has proceeded upon the assumption that the jury found that the deed to Fink had been forged. In point of fact it determined only that plaintiff did not execute and deliver the deed, and did not decide whether he had or had not authorized its execution

or whether he knew or did not know that it was executed by his father for him. These are, of course, mere hypotheses, but are legitimate. No finding of the trial court, or any verdict of the jury, compels the inference that the deed was forged. None the less the cases of forged deeds, on which the plaintiff relies, and which will be subsequently referred to herein, are apt in point of principle.

It is elementary that ordinarily the owner of land, who is in possession of land, or whose title is of record, is under no legal obligation to give notice of his title to the public. Where, however, the owner knows of facts not appearing upon the record, which in their nature are likely to deceive, the effect of which is to invalidate an apparently good title, the situation is substantially different. His silence, if deceptive, and especially if accompanied by intention to defraud, may then operate to estop him from asserting an adverse title based thereon. The controversy as to when the owner of the land thus estops himself is governed by well-established principles:

1. The defense of estoppel applies to legal and equitable causes of action alike.

2. To create an estoppel, the conduct of the party need not consist of affirmative actual words. It may consist of silence, or a negative omission to speak or act when it was his duty to speak or act.

3. It is not necessary that the facts be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him.

4. It is not necessary that the party estopped conduct himself with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct occurred under such circumstances that he should have known that it was both natural and probable that it would be so acted upon to another's prejudice.

5. The circumstances must have been such as to have imposed on the party sought to be estopped the duty of speaking or acting, and to have afforded him an opportunity so to do.

6. Estoppel can be invoked only by the innocent. Negligence by the party invoking it may deprive him of its protection. The truth must have been unknown to him when he acted.

7. The conduct must have been relied upon by the party misled, and, thus, relying, he must have been led to act upon it, and he must in fact act upon it in such a manner as to change his position for the worse.

These propositions are, in part, in the language of Mitchell, J., in Dimond v. Manheim, 61 Minn. 178, at page 182, 63 N. W. 495, and, in part, in that of Smith, J., in Schott v. Linscott, 80 Kan. 536, 103 Pac. 999. And see 3 Words & Phrases, 2498. Among the many later cases the following will be found instructive in sustaining these and other views expressed: Schott v. Linscott, 80 Kan. 536, 103 Pac. 999; Pierce v. Texas (Tex. Civ. App.) 114 S. W. 857; Ashley v. Pick, 53 Ore. 410, 100 Pac. 1103; Sigel-Campion v. Holly, 44 Colo. 580, 101 Pac. 68. An excellent compilation of modern authority will be found in 13 Current Law, 1603–1609. And see 8 Dec. Dig. § 70, title "Estoppel."

"But, while certain general requisites are held essential to create an equitable estoppel" said Mr. Justice Mitchell in Dimond v. Manheim, supra, "yet the courts have always been cautious, as in the matter of defining fraud, not to give a definition of universal application, without modification or limitation, and without reference to the peculiar facts of a particular case." The main controversy is not as to these general principles, but whether or not the particular fact in a case at issue brings the controversy within them. It is in this light that the various authorities are to be considered.

Defendant has called our attention to many cases, especially of forged deeds, which tend to support his contention. None of these cases are identical as to facts presented with the case at bar. This is true, for example, of Meley v. Collins, 41 Cal. 663, 10 Am. Rep. 279. The circumstances in that case, as in Hunt v. Reilly, 24 R. I. 68, 52 Atl. 681, 59 L.R.A. 206, 96 Am. St. 707, and in Chandler v. White, 84 Ill. 435, differ so materially from those presented by the case at bar, that they do not at all control. Nor are some applications of the rules there to be found consistent with the previous decisions of this court subsequently to be referred to herein. Moreover, Baillarge v. Clark, 145 Cal. 589, 79 Pac. 268, 104 Am. St. 75, is more in accord with Holcomb v. Independent School District

of Duluth, post, and with the conclusions of the trial court, than with the law applied in Meley v. Collins.

Defendant has laid especial stress upon Viele v. Judson, 82 N. Y. 32, and Wiser v. Lawler, 189 U. S. 260, 23 Sup. Ct. 624, 47 L. ed. 802. Both those cases recognize substantially the principle previously herein stated. Both involve essentially different facts. For example, in Viele v. Judson, supra, "proper search, carried through the indices of the records, would have disclosed the assignment to Viele and the invalidity of Vaughn's discharge. The danger lay in an inaccurate and incomplete search. Against that possibility the plaintiff was not bound to provide. Nobody relied on his silence or was misled by it." In the case at bar the question whether an accurate and complete search of the records would have apprised the investigator of the defect in the title is one of the principal issues, which, as will subsequently appear herein, must be resolved against plaintiff. There are also other significant points of distinction.

The facts in Wiser v. Lawler will be found on examination to have been so entirely different from those in the case at bar that that case, while relevant, is in no wise controlling. Mr. Justice Brown pointed out: "Indeed, it was not even an ordinary case of estoppel by silence, but an estoppel by silence concerning facts of which defendants may have had no actual knowledge." The doctrine there applied justified the court here in excluding defendant Henry from any advantage from estoppel; but, as to defendant Alworth, and other defendants of the same class, there can be no question that under the findings knowledge was attributed to them since 1892.

There is nothing in that case, moreover, inconsistent with the rule applied, for example, in Gregg v. Von Phul, 1 Wall. 274, 17 L. ed. 536. Mr. Justice Davis there said: "The doctrine of estoppels 'in pais,' or by the act of the party, is founded in natural justice, and is a principle of good morals as well as law." "The primary ground of the doctrine is that it would be fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted. No one is permitted to keep silent when he should speak, and thereby mislead another to his injury. If one has a claim against an estate, and does not disclose it, but stands by and suffers the es-

tate sold and improved, with knowledge that the title has been mistaken, he will not be allowed afterwards to assert his claim against the purchaser. And justly so, because the effect of his silence has actually misled and worked harm to the purchaser. And in this case the silence of Gregg concludes him." It is in accord with the undisputed and indisputable rule that one tacitly encouraging an act must abide the consequences. Justices v. Murray, 9 Wall. 274, 19 L. ed. 658.

The previous rulings of this court, however, imposed on this plaintiff the duty, under the circumstances here presented, of taking affirmative action whereby warning would be given possible purchasers relying on the record title of the claimants of the land Bausman v. Kelley, 38 Minn. 197, 36 N. W. 333, 8 Am. St. 661; Bausman v. Faue, 45 Minn. 412, 48 N. W. 13; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495; Holcomb v. Independent School District of Duluth, 67 Minn. 321, 69 N. W. 1067.

In particular the decision in Holcomb v. Independent School District of Duluth, supra (cf. Baillarge v. Clark, supra, and Oldham v. McElroy, 134 Ky. 454, 121 S. W. 414), while distinguishable from the instant case, involved an application of law to similar circumstances. Plaintiff's husband, living apart from her, in 1877 conveyed the lot by his sole deed, reciting that he was unmarried. The deed was recorded. Five years later his wife learned of the deed, the representation therein, and its record, gave no notice of the marriage, abandoned the lot, left the state, and asserted no claim thereto until the commencement of the action in 1895. The lot increased in value, and defendant in good faith bought it and constructed an expensive school building. It was held that the wife had estopped herself by her conduct from asserting any title to the lot.

In the case at bar, plaintiff, with Fink, had gone on the land pursuant to an arrangement with his father. The deed to Fink was executed and recorded. Originally plaintiff and the father spelled the family name as in the deed, "Macomber." Subsequently, and long before the Alworth purchase, plaintiff spelled it "McComber." Legal knowledge of the defective record title arising from this discrepancy in the spelling of the name in the deed came to plaintiff in

1892. His silence, his failure to take any action at any time is significant. The land in question he practically abandoned. Taxes accrued, but he did not pay them. Squatters settled upon the land, but he took no steps to eject them. Pursuant to the Fink deed, timber was cut from the land without objection or protest from him. The iron excitement increased in the district. The grantees under the Fink deed made extensive explorations after plaintiff knew of the defective title, without arousing him to protesting action. Plaintiff never took possession of the land, paid practically no attention to it by way of visits or otherwise, and exercised no active ownership thereof.

This was the more significant, inasmuch as the abstracts in his possession showed—the first, that nineteen transfers appeared subsequent to the Fink deed; and the second, the thirty-four additional numbers. Moreover, the claim of title by Fink's vendees was the subject of significant litigation concerning which a lis pendens had been filed. It was asserted in the record of insolvency proceedings, in which the land appeared as an asset of Fink's vendee. Plaintiff should have known that it was both natural and proper for the deceptive condition of the record to be acted upon by innocent third parties relying upon it to their subsequent damage. He had an opportunity to disclose the concealed defect by bringing an action and by filing a lis pendens, which would create a corrected record and would duly apprise diligent persons inquiring into the truth.

Was it his duty to act? That depends upon the answer to the question whether the record disclosed the defect. The consideration of this controversy immediately follows.

Alworth and others made the purchase, paid the consideration price, discharged incumbrances on the title which they had bought, and expended considerable sums upon the land. There is nothing legally significant that these expenditures did not primarily benefit the premises. Defendants certainly changed their positions for the worse in reliance on the record. Necessarily reliance upon failure to speak or act differs from reliance on affirmative misrepresentations. It must be inferential in process and negative in character. Defendants Alworth and others did not actually know the truth.

Were they negligent in not being put upon inquiry by the record? If they were, the knowledge which they would have obtained by inquiry is attributed to them, and the estoppel is defeated. The question may be put in another way: Was the defect in the title acquired concealed or apparent? If apparent, the estoppel is prevented. If concealed, default lay with the plaintiff for his silence or inaction.

The crux of the case, it is evident, is the legal effect of the appearance on the record of the discrepancy in the name of the plaintiff in the patent and in the Fink deed. The rule of law applicable is well formulated in Robson v. Thomas, 55 Mo. 581: "It matters not how two names are spelled, what their orthography is. They are 'idem sonans,' within the meaning of the books, if the attentive ear finds difficulty in distinguishing them when pronounced, or common and long-continued usage has by corruption or abbreviation made them identical in pronunciation." State v. Jones, 55 Minn. 329, 331, 56 N. W. 1068 ("Johnston" and "Johnson" idem sonans).

The following names have been held to come within the rule: "Bert Samrud" and "Bernt Sannerud"—State v. Sannerud, 38 Minn. 229, 36 N. W. 447. "Malay" and "Mealy"—Com. v. Donovan, 13 Allen (Mass.) 571. "Marres" and "Mars"—Com. v. Stone, 103 Mass. 421. "Mary Etta" and "Mariette"—Goode v. State, 2 Tex. App. 520. "McConnelsburg" and "Connellsburg"—Gibson v. Gibson, 20 Pa. St. 9. "McDonald" and "McDonnell"—McDonald v. People, 47 Ill. 533. "McGilligan" and "Megilligan"—Pope v. Kirchner, 77 Cal. 152, 19 Pac. 264. "McGinnis" and "McInnis"—Barnes v. People, 18 Ill. 52, 65 Am. Dec. 699. "McLaughlin" and "McGloflin"—McLaughlin v. State, 52 Ind. 476. "Meyer," "Meyers," and "Mayer"—Smurr v. State, 88 Ind. 504. "Michal" and "Michaels"—State v. Houser, 44 N. C. 410. "Minner" and "Miner"—Jackson v. Boneham, 15 Johns. (N. Y.) 226. "M'Nicole" and "M'Nicoll"—Reg. v. Wilson, 2 C. & K. 527, 61 E. C. L. 527. "Montacue" and "Montague"—State v. Montague, 2 McCord (S. C.) 257. "Moss" and "Morse"—Litchfield v. Farmington, 7 Conn. 99, 108. "Mozer," "Mousuer," and "Mouseuer"—Ruddell v. Mozer, 1 Ark. 503. "Meetz" and "Metz"—Metz v. McAvoy, 98 Ill. App. 584,

592. "Mikel" and "Mikil"—Mikel v. State, 43 Tex. Crim. R. 615, 68 S. W. 512.

It is logically immaterial that some of these cases concerned criminal proceedings. Indeed, such cases involve a peculiarly strict ruling. It is quite obvious that "Macomber" and "McComber" must be treated as "idem sonans," especially in view of the fact that plaintiff and his father originally spelled the name, not McComber but Macomber.

Defendant's attorneys, men of recognized carefulness and ability, were not negligent in failing to discover and point out the difference. In view of the history of the family name, a proper explanation of the record would not have disclosed a defect in the title. Plaintiff's silence was "deceptive," within the meaning of the rule laid down in Wiser v. Lawler, supra, and was therefore a breach of his duty.

Plaintiff has urged upon us considerations derived from a study of the history and character of the occupying claimants' act as affording a reason why the doctrine of estoppel should not be applied to him. We have given these considerations due force, and find in them no occasion for alteration in the conclusion which immediately follows. The provisions of that law are applicable where the owner of the fee is not estopped from asserting his ownership. The whole question here is whether plaintiff is thus estopped. Defendants make no claim under such provisions. Madland v. Benland, 24 Minn. 372, concerned a controversy entirely different from that here involved.

We conclude plaintiff was guilty of silence or negative omission to act under circumstances which necessarily attributed a knowledge to him of the defect in the title, from which he should have known that his conduct would naturally and properly have been acted upon to another's prejudice, and by which there was imposed on plaintiff a duty to speak and act, by which an opportunity was evident so to do. Alworth and others did not know of the defect in the title when they purchased it in good faith and expended upon it considerable sums of money and in reliance upon plaintiff's conduct. It is fair to plaintiff to add further herein that his claim was fully argued that he had been deprived of his title to part of said land

without due process of law under the terms and meaning of article 14, § 1, Const. U. S., by a judgment based on a conclusion of law not supported by findings of fact made and filed, and inconsistent therewith, and in violation of plaintiff's federal rights and title. The title referred to is the one vested by the trial court in Alworth and others of his class.

2. The remaining question concerns the propriety of the rule of the trial court that [the fact] defendant Henry could not invoke the doctrine of laches did not preclude plaintiff from obtaining relief. As to estoppel, availing alike in law and equity, Henry's purchase was made before the knowledge of the discrepancy in names was known to plaintiff. The learned trial judge accordingly properly concluded that defendant Henry and defendant Alworth and others occupied substantially different positions, and that as to defendant Henry plaintiff was not estopped from asserting his absolute title.

His conclusion that laches did not bar plaintiff was equally necessary. The action, "although a statutory one, is substantially an equitable one, unless the issues made by the answer and reply are strictly legal ones." See Start, C. J., in Mathews v. Lightner, 85 Minn. 333, 88 N. W. 992, 89 Am. St. 558. That laches was asserted in the answer did not change the legal issues involved, unless that defense was properly interposed. To assert that it was so interposed is merely to beg the question, and does not advance the reasoning nor determine that defendant could prevail because of defendant's silence. It is to be remembered that as to defendant Henry plaintiff was under no duty to act, and was justified in relying upon his record title. He was ignorant of any defect therein. Accordingly we are constrained to hold that there was no error in the conclusion of the trial court.

Affirmed.

On April 13, 1911, the following opinion was filed:

PER CURIAM.

It having been held that plaintiff owed no duty to assert his title

114 M.—11.

as to defendant Henry, reargument was granted on the question whether under the evidence defendant Henry did not stand in the same position as the other ·defendants.

A majority of the court adhere to the former decision, but Justices Lewis and Simpson are unable to distinguish between the two sets of purchasers. Henry purchased after the Fink deed was recorded, but before plaintiff was furnished with the abstract in 1892. The others purchased after the abstract had apprised plaintiff that the Fink deed had been executed and recorded. In connection with the other purchasers, Henry expended money in exploration, and paid his proportion of the taxes for fourteen years. The dissenting justices are of the opinion that plaintiff was equitably estopped to assert any title against defendant Henry, as well as against the other purchasers, and cite the following authorities: Holcomb v. Independent School District of Duluth, 67 Minn. 321, 69 N. W. 1067; Wampol v. Kountz, 14 S. D. 334, 85 N. W. 595, 86 Am. St. 765; Murphy v. Dafoe, 18 S. D. 42, 99 N. W. 86.

Former opinion adhered to.