Ray **HUTTON**, Plaintiff and Appellant,

v.

Ardell **KORYNTA**, Defendant and Appellee.

Civ. No. 8977.

Supreme Court of North Dakota.

May 1, 1974.

Rehearing Denied June 4, 1974.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for plaintiff and appellant.

Frank J. Kosanda, Grand Forks, for defendant and appellee.

VOGEL, Judge.

This appeal involves a dispute between Ray Hutton, the appellant, who claims to have renewed a five-year agricultural lease on land in Grand Forks County, and Ardell Korynta, the appellee, who claims to have purchased the land free and clear of the lease.

The original lease was entered into on September 21, 1966, between Ray Hutton and William Korynta, the former owner, now deceased. The lease covered the five years of 1967 through 1971. William Korynta died on July 4, 1970, and thereafter Hutton paid rent to Florian Korynta and Maurice Korynta, the co-administrators of William's estate.

On December 30, 1970, Hutton advised Maurice Korynta, as a co-administrator, by letter of his intention to exercise the option to renew the lease. By a letter from their attorney, the administrators advised Hutton that they refused to recognize the option to renew the lease. Hutton's attorney responded by a letter dated September 2, 1971, claiming valid renewal of the lease. On April 10, 1972, the attorney for Hutton tendered to the attorney for Korynta's estate a bank draft for $800 payable to the estate of William Korynta, together with a letter referring to the previous correspondence and advising of the attempt to renew the lease.

The attorney for the estate was William McMenamy. His position was that the option provisions of the lease were too vague and indefinite to be enforceable and that the estate was not bound by them.

The language of the option provision is:

"The party of the second part [Hutton] holds option to rent this land for an additional 5 years at termination of this lease and has the right to sub-lease all or part of this land at his discretion. The party of the second part also reserves the right to purchase this land at anytime during the lease period or at the termination of this lease."

The parties seem agreed that the provision referring to an option to purchase is too vague and indefinite to be enforceable. They differ as to the enforceability of the option to renew the lease. The trial court held that the option to renew the lease was sufficiently definite to be enforceable, holding that the terms of the original lease as to rental payments, dates of payment, and term of the lease provided the required certainty as to the terms of the renewal, citing 50 Am.Jur.2d Landlord and Tenant, Sec. 1158; 51C C.J.S. Landlord and Tenant § 56(3); and an annotation at 30 A.L.R. 572, all to the general effect that an option to renew implies a renewal for the same rental, term, and conditions as provided in the original lease. The court also relied

upon Hughes Realty Co. v. Breitbach, 98 N.W.2d 374 (N.D.1959), holding that ambiguities in leases ordinarily are to be construed in favor of the tenant and that a provision for renewal is to be deemed to contemplate the same terms of rental as the previous lease.

The trial court further held that the correspondence between the attorneys and between Hutton and the attorneys for the estate constituted a valid exercise of the option to renew the lease.

The trial court decided a third point in favor of the appellee, holding that the appellant was estopped by his own conduct from claiming a valid renewal of the lease. The claim of estoppel arises from the conduct of the appellant at the time when the co-administrators were offering the land for sale to the highest bidder.

The sale was first scheduled for an earlier date than the ultimate sale date, but attorney McMenamy died unexpectedly the night before the scheduled date, so the sale was postponed. At the subsequent sale, on April 26, 1972, held in the offices of the attorneys for the co-administrators, both Hutton and the appellee were among the six or seven persons present. The attorney handling the sale announced that the successful bidder would have immediate possession of the land. Hutton made no response to this statement. He participated in the bidding but was unsuccessful, and the high bidder was Ardell Korynta, the appellee here, who subsequently entered into a contract for deed for the purchase of the property.

The appellee claims he had no knowledge whatever of the correspondence between the attorneys or between some of the attorneys and Hutton, and that he had no information whatever to the effect that an effort to renew the lease had been made. He claims to be a purchaser in good faith and he claims that Hutton is estopped from claiming under the lease. As we indicated, the trial court held in favor of the appellee on the estoppel issue, pointing out that there was no evidence that Hutton was in possession of the land (he having removed all of his machinery and crops earlier), that the lease was not of record, and that Hutton "was present at the sale, made no protest at what was, according to him, a misstatement regarding title to the land, and bid on the land. He is therefore estopped from asserting any interest in the land." The trial court cited 28 Am.Jur.2d Estoppel and Waiver, Secs. 83 and 90, and Macomber v. Kinney, 114 Minn. 146, 128 N.W. 1001 (1910), affirmed on rehearing 130 N.W. 851 (1911).

Hutton appealed from that portion of the judgment relating to the estoppel.

The appellee admits that he had knowledge of the prior lease of Hutton and that he asked for and obtained a copy of the lease from Mr. McMenamy before deciding to bid on the land. He took his copy of the lease, containing the option for renewal, to his own attorney, and says that both his own attorney and Mr. McMenamy told him the option was too vague to be enforced. He says he looked at the property and saw that no machinery or grain remained on it and concluded that no one was in possession. He also checked the records and found no lease of record. He made no inquiries of the one person who could give him a direct answer as to whether Hutton claimed an interest in the property, Hutton himself.

It should be added that the $800 tender which accompanied the third letter claiming an exercise of the option to renew the lease was retained by McMenamy in his file, after making a memorandum that he was holding the check until after the sale.

The attorney whom the appellee had consulted earlier with regard to the lease was not called as a witness at the trial by either side.

■ The requirements of an effective estoppel have been stated many times by this court, often in identical language, most recently in Sittner v. Mistelski, 140 N.W.

2d 360, 367 (N.D.1966), quoting Boggs v. Merced Mining Co., 14 Cal. 279, at 367–368:

"It is undoubtedly true that a party will in many instances, be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property, it must appear: *first*, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; *second,* that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved."

Other statements of the essentials of equitable estoppel include those in Loff v. Gibbert, 39 N.D. 181, 166 N.W. 810 (1918), from which the following was quoted in Fargo National Bank v. Massey-Ferguson, Inc., 400 F.2d 223 (CA 8 1968):

"An equitable estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." 400 F.2d, at 227.

Although the trial court did not cite the North Dakota authorities mentioned above, the memorandum opinion cites encyclopedic authority in general agreement with North Dakota law. It is plain that the trial court, as the finder of fact, made a determination that the four requirements specified in *Sittner* had been met and that an equitable estoppel arose when Hutton sat silent while representations were made that the successful bidder would obtain immediate possession. The court apparently found that Hutton had a duty to speak out and that his failure to do so induced the appellee to believe he was entitled to immediate possession and that the appellee relied upon that belief, to his prejudice.

■ While Hutton argues that the four requirements of *Sittner* have not been met, and surely makes strong arguments to that effect, the fact remains that the evidence was sufficient to justify a holding to the opposite effect. There is evidence from which the trial court could find that Hutton knew the true state of his own title but chose not to disclose it, and instead relied upon the expectation that he either would be the successful bidder or would be able to take possession from the successful bidder for five years under the lease; that he sat silent either with the intention to deceive or with such culpable negligence as to amount to constructive fraud; that the appellee had no knowledge of the exercise of the lease option by Hutton and had exhausted reasonable means of acquiring such knowledge by his inquiries of the two lawyers; and that the appellee relied upon the admission by silence and would be injured by allowing the contrary to be proved.

The detriment to the appellee was shown by the fact that he had obligated himself to borrow and repay a large amount of money at a high rate of interest and had made improvements on the premises in reliance on his purchase of the title to the property.

■ While we might have decided the case differently had we been the triers of fact, we hold that there is sufficient evidence to sustain the findings of fact of the trial court, and that they are not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

Affirmed.

ERICKSTAD, C. J., and TIEGEN, PAULSON and KNUDSON, JJ., concur.