BERNARD P. MOONEY, *d. b. a.* MOONEY'S,
v. W. E. JONES AND OTHERS.
NATIONAL GUARDIAN LIFE INSURANCE COMPANY,
APPELLANT.[1]

August 30, 1952.

No. 35,810.

---

[1]Reported in 54 N. W. (2d) 763.

2

*Sullivan, Stringer, Donnelly & Sharood,* for appellant.
*Joseph C. Vesely,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

Plaintiff, Bernard P. Mooney, is a lone trader engaged in the general plumbing and heating contracting business in Minneapolis. Defendant National Guardian Life Insurance Company, referred to hereinafter as National Guardian, is a Wisconsin mutual life insurance company licensed to transact business in the state of Minnesota. Defendant W. E. Jones resides at Marshall, Minnesota. Defendant Marshall Theatre Building, Inc., referred to hereinafter as Theatre, is a Minnesota corporation. Theatre owns a combination motion-picture theater, apartment, and office building, referred to hereinafter as the property, located at Marshall, Minnesota. On December 5, 1946, Jones and his wife and Theatre, as mortgagors, executed and delivered to Equitable Reserve Association of Neenah, Wisconsin, a note for $90,000, secured by a mortgage on the property. Thereafter, on November 14, 1947, Theatre, as mortgagor, executed and delivered to National Guardian its note for $175,000, secured by a mortgage on the property, which mortgage was filed for record in the office of the register of deeds of Lyon county, Minnesota, on November 15, 1947. Of this amount, $90,000 was paid to Equitable Reserve Association for a satisfaction of its mortgage. By stipulation, all parties recognized, and the court found, that

National Guardian's mortgage is a first and paramount lien to the extent of the $90,000 so paid.

On October 30, 1946, plaintiff, at the request of Jones, and later of Theatre, commenced the performance of certain work and labor and furnished certain plumbing and heating materials on the property. It appears from the court's findings that the first item of labor and material was furnished by plaintiff on the job on October 30, 1946, and the last item on April 27, 1948, in the total sum of $37,798.11. Plaintiff filed his lien claim July 23, 1948, and brought this action to establish the validity of his lien claim on October 11, 1948.

The record shows that on August 6, 1947, plaintiff received a check from one G. M. Gustafson (now deceased) for $6,543.53 to apply on plaintiff's account, which amount paid him in full for all labor and materials furnished Theatre from October 30, 1946, to May 30, 1947. Gustafson identified himself in his deposition as president of G. M. Gustafson Company of Minneapolis, engaged in the insurance business. He said that the $6,543.53 was paid out of loan funds which the Gustafson company had from Equitable Reserve Association and that the check was issued by the Gustafson company, but no waiver of lien claim was taken at that time. After this payment, plaintiff continued to furnish labor and materials to Theatre until about October 2, 1947, when he took his men off the job because he was not being paid. Plaintiff testified that Gustafson called him to his office in Minneapolis on December 12, 1947; that they discussed the status of the job from which plaintiff had withdrawn; and that Gustafson told him that he had made arrangements "for the payments on the bills which he had been billed and for the completion of the job." He said that Gustafson also told him that National Guardian was "in the arrangements"; that he was representing them; and that they were ready to pay plaintiff's services up to October 2, "but they would have to have a lien waiver for that." At that time, plaintiff received from Gustafson a cashier's check for $12,000 drawn on First National Bank of St. Paul. According to plaintiff's testimony, $9,835.83 of that

amount paid him for labor up to October 9, 1947, and for materials until October 7, 1947. At the time he received the $12,000 check, plaintiff signed, executed, and delivered to Gustafson a "RECEIPT AND WAIVER OF MECHANICS' LIEN RIGHTS" (exhibit A), which read in part as follows:

"December 12, 1947

"The undersigned acknowledges having received payment of Ninety-eight Hundred Thirty-five and 83/100 Dollars ($9,835.83) from Marshall Theatre Building, Inc., in part payment of all radiator pipes, fittings for heating system (city heat), and all materials, pipes, fittings and appliances for bathrooms, bathroom and other plumbing fixtures in premises and labor occasioned thereby by the undersigned delivered or furnished to (or performed at)

[description of property]

and for value received hereby waives all rights which may have been acquired by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises prior to the date hereof.

"BERNARD P. MOONEY, d/b/a MOONEY'S
PLUMBING AND HEATING COMPANY

"By /s/ B. P. Mooney
/s/ Owner
4745 France Avenue South
Minneapolis, Minnesota

"PLUMBING, HEATING and PLASTERING contractors must sign statement on reverse hereof."

On the reverse side of this exhibit appeared the following:

"STATEMENT TO BE SIGNED BY
PLUMBING, HEATING AND
PLASTERING CONTRACTORS"

"The undersigned for the purpose of obtaining payment of the amount acknowledged within, hereby affirms that all material furnished to the within described premises by, through or under the undersigned was furnished by _____ and that the at-

tached receipts or releases represent payment in full or release in full of mechanics' lien rights for all such material.

"BERNARD P. MOONEY, d/b/a MOONEY'S PLUMBING AND HEATING CO.

"By /s/ B. P. Mooney"

On the same date, plaintiff also signed, executed, and delivered to Gustafson a receipt (exhibit B), which read as follows:

"RECEIPT AND WAIVER OF MECHANICS' LIEN RIGHTS

"December 12, 1947.

"The undersigned acknowledges receipt of payment of Twenty-one Hundred Sixty-four and 17/100 Dollars ($2,164.17) from Marshall Theatre Building, Inc., as payment in advance for work, labor and materials to be supplied and furnished by the undersigned and to be hereafter delivered to or performed at the following described premises:

[description of property]

"BERNARD P. MOONEY, d/b/a Mooney's Plumbing and Heating Company

"By /s/ B. P. MOONEY

814 East Lake Street

Minneapolis, Minnesota"

Plaintiff testified that Gustafson told him that if he would go back on the job the balance of the check ($12,000 less $9,835.83, or $2,164.17) was to apply on future work; that they only wanted a receipt for that amount of money; and that the advance was given him because "they did not want to be bothered with billing every month. That they wanted the job completed and we would bill it in one bill and that the insurance company would pay me complete." When asked if Gustafson told him that he was representing the National Guardian, plaintiff said that he did.

In this connection, Gustafson's testimony in his deposition was to the effect that exhibits A and B were drawn up in two different

ways, inasmuch as plaintiff had over $9,000 past due and some materials on the job. He explained that—

"The first [exhibit A] what was past due and the balance [exhibit B] was the materials on the job which still had not been installed or labor which was yet to be performed. And as I remember it, Mr. Mooney was questioning the fact that he should have lien rights and I pointed out to him that under this thing he would have lien rights for whatever was not paid after this date."

Plaintiff further testified that from October 9 to December 16 or 17, 1947, he furnished additional materials on the job amounting to $2,061.33. (He had no men on the job between October 7 and December 16, 1947.) It therefore appears from the record that the $12,000 check included $102.82 more than plaintiff had coming at the time he received the check and signed the waiver and receipt, which fact was agreed upon by both parties to the controversy. It also appears undisputed that plaintiff knew that the $12,000 was paid from funds loaned Theatre by National Guardian, but he claims that he did not know at that time that Gustafson was an officer and director of Theatre, and that Gustafson did not inform him that he was.

The trial court found that plaintiff completed, executed, and delivered the lien waiver and receipt upon the representations and statements made by Gustafson that plaintiff's lien rights for work to be done or material to be furnished on the premises would not be affected thereby; that National Guardian would be responsible for all future payments for work to be done by plaintiff under contract with Theatre; and that such payment would be made to plaintiff upon completion of the work to be done under his contract. It also found that Gustafson negotiated, on behalf of Theatre, the loan from National Guardian; that the mortgage loans of Equitable Reserve Association and National Guardian were made for the purpose of financing the cost of construction of Theatre's building; that the loans of both Equitable Reserve Association and National Guardian were intended by all parties to the mortgages to be first and paramount liens against the property described in the mort-

gage, so that the requirements of the statutes of Wisconsin governing the investment of life insurance fraternal association funds could be complied with; that at the time of such negotiations, and particularly at the time of the delivery of the $12,000 check to plaintiff, Gustafson was an officer, director, and stockholder of Theatre, which fact was not disclosed to plaintiff; and that Gustafson, on behalf of Theatre, paid plaintiff $12,000, and, in return, plaintiff completed, executed, and delivered the lien waiver and receipt—

"upon the representation and statements made by said Gustafson that plaintiff's lien rights for work to be done or materials to be furnished on the particular premises would not be affected thereby, and that National Guardian Life Insurance Company would be responsible for all further payments for work to be done by plaintiff under his contract with Marshall Theatre Building, Inc., and that such payments would be made to plaintiff upon the completion of the work to be done by him under his said contract, all of which statements thus made by said Gustafson were false and untrue; * * * ."

The court concluded that the mortgage of National Guardian was a first and paramount lien against the property to the extent of $102,000, with interest, which sum represented the $90,000 paid by National Guardian to Equitable Reserve Association and the $12,000 paid plaintiff on December 12, 1947; that plaintiff was entitled to judgment against Theatre for $19,254.58, including attorney's fees and interest, together with costs and disbursements, and ordered judgment accordingly; and that such judgment would be inferior, junior, and subordinate to the $102,000 loan of National Guardian. In other words, the court concluded that $102,000 of National Guardian's loan of $175,000 would be a first lien on the property, and that plaintiff's judgment of $19,254.58 would then follow and be superior to the balance of National Guardian's mortgage of $175,000.

Both sides agree that the only question for our determination is the one of priority of liens; that is, whether the lien claim of

$19,254.58 awarded plaintiff by the trial court is prior and superior to any part of National Guardian's mortgage.

National Guardian's position is that the entire amount of its $175,000 mortgage is prior and superior in every respect to the lien claim awarded plaintiff by the trial court. It argues that by plaintiff's abandonment of the work and his subsequent execution and delivery of valid lien waivers for all labor performed and materials furnished by him prior to the $12,000 payment on December 12, 1947, he not only satisfied and discharged all lienable claims which he then had, but that he subordinated any lienable claims he might thereafter have to National Guardian's mortgage, which he knew was on record. Plaintiff, on the other hand, argues that a principal agency relationship was created and existed between National Guardian, as principal, and G. M. Gustafson, as agent, at the time of the delivery of the $12,000 check; that one of the purposes for such a relationship was to have Gustafson secure some kind of a lien waiver and receipt from plaintiff for the benefit of National Guardian; that Gustafson got the cashier's check from National Guardian's attorneys, together with the lien waiver and receipt completely filled out and ready for plaintiff to sign; and that in doing these things National Guardian at least clothed Gustafson with the proper instruments which enabled him to represent to plaintiff that he was National Guardian's agent.

While there is testimony in the record from which the court could find that Gustafson made statements to plaintiff that he was representing National Guardian, which statements could have misled plaintiff into believing that his lien rights would not be affected by his signing the waiver and receipt, it is our opinion that the record is insufficient to show that National Guardian did anything to hold Gustafson out as its agent. Its only act was to turn over to Gustafson, through its attorneys, the $12,000 check and lien waiver and receipt forms. Under the particular circumstances here, that would seem like a perfectly normal transaction between a mortgagor and a mortgagee, since it is clear that at that time Gustafson was an officer and director of Theatre, the mortgagor—a fact well

known to National Guardian, the mortgagee. The fact that plaintiff was not aware of Gustafson's position may well have misled him, but responsibility for this absence of knowledge on plaintiff's part cannot be charged to National Guardian, under the circumstances here.

In Burchard v. Hull, 71 Minn. 430, 435, 74 N. W. 163, 164, speaking through Mr. Justice Mitchell, this court said:

"It is axiomatic in the law of agency that no one can become the agent of another except by the will of the principal, either express or implied from the particular circumstances; that an agent cannot create in himself an authority to do a particular act merely by its performance. It is equally axiomatic that the extent of the authority of an agent also depends upon the will of the principal, and that the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent."

Again in Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 447, 124 N. W. 236, 239, 50 L.R.A.(N.S.) 74, this court said:

"It is elementary that the power of an agent to bind his principal rests entirely upon the authority conferred upon him. Without such authority, for which the principal himself becomes, by act or conduct, responsible, the agent can bind himself only. 'Every person, therefore, who undertakes to deal with an alleged agent, is put upon inquiry, and must discover at his peril that such pretended agent has authority, that it is in its nature and extent sufficient to permit him to do the proposed act, and that its source can be traced to the will of the alleged principal.' 31 Cyc. 1322; Ermentrout v. Girard F. & M. Ins. Co., 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346, 56 Am. St. 481."

Plaintiff argues that the facts here place the acts of Gustafson and of National Guardian within the pale of the law known as apparent or ostensible authority of an agent. We have examined the authorities cited by plaintiff, but it is our opinion under the record

here that there were no acts of National Guardian which misled plaintiff as to the position of Gustafson so as to estop it from denying that he was an agent of National Guardian.

Considering all the facts and circumstances, it is our opinion that the lien waiver and receipt signed by plaintiff were effective to give National Guardian a first lien over plaintiff's claim; therefore, the judgment of the trial court must be modified to give the mortgage of National Guardian priority for its full amount of $175,000 over the lien awarded plaintiff.

Judgment modified.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.

---

[1]Reported in 54 N. W. (2d) 769.