WEST CONCORD CONSERVATION
CLUB, INC., Respondent,

v.

Virgil J. CHILSON, Sr., Lorraine A.
Chilson and Norman C. Jackson,
Sr., Appellants,

Randy Sackett, Defendant.

Southern Minnesota Coon Club, Inc.,
Richard Sackett and Larry
Narveson, Appellants,

and

Virgil J. CHILSON, Sr., et al., Third
Party Plaintiffs,

v.

Sandra and Randy SACKETT, Fourth
Party Plaintiffs,

v.

Wilmar PLEVKE, Fourth Party
Defendant, Respondent.

Nos. 51439–51441.

Supreme Court of Minnesota.

June 26, 1981.

Gartner Burkhardt Shulman & Ekstrand, David A. Shulman and James Nordstrom, Rochester, for Southern Minnesota Coon Club, et al.

Schoen & Jones and Harvey N. Jones, Hastings, for Chilson, et al.

Tengwall & Weber and Brian L. Weber, West Concord, for West Concord Conservation Club, Inc.

Wilmar Plevke, pro se.

PETERSON, Justice.

Defendants appeal from an order of the trial court granting plaintiff title to a tract of real property in Dodge County known as "Mill Tract." We affirm.

Since the facts in this case are rather complicated, they are summarized herein according to the evidence credited by the jury and the trial court. In 1962, plaintiff West Concord Conservation Club, Inc. (hereinafter Conservation Club) acquired title to two tracts known as "School Tract" and "Mill Tract." Real estate taxes accrued on the property for the years between 1968 and 1974, when the club was virtually inactive.

Defendant Wilmar Plevke was elected secretary-treasurer of the Conservation Club in 1968. On May 23, 1974, Plevke signed a quitclaim deed conveying "Mill Tract" to the Southern Minnesota Coon

Club, Inc. (hereinafter Coon Club) with the understanding that the Coon Club would pay the delinquent taxes on the tract. Plevke represented to the president and sole shareholder of the Coon Club, Richard Sackett, that he was president of the Conservation Club and that he had been authorized by the club to sell the property.

The Coon Club sold "Mill Tract" in spring of 1976 to Randy Sackett, Richard Sackett's nephew, for $5,300. Richard Sackett kept the proceeds of the sale and issued the club a promissory note. The quitclaim deed to Randy Sackett and the prior deed to the Coon Club were recorded on October 20, 1976. The newly-appointed secretary-treasurer of the Conservation Club discovered the quitclaim deeds in fall of 1976 and informed Richard Sackett and, later, Randy Sackett that the Conservation Club had retained ownership of the property, since Plevke had no authority to sell "Mill Tract."

Randy Sackett and his wife, Sandra, thereafter contracted to sell the tract for $8,000 to Lorraine A. Chilson, Virgil Chilson, Sr., and Norman Jackson. Prior to closing, Mrs. Chilson inspected the property and discovered a utility box in open view on the premises. She was informed by her attorney that the utilities were being paid by the Conservation Club and that she should seriously consider the effect of that present possession on the title. Despite the question regarding the possession of the property by the Conservation Club, the purchasers stated that they would take the risk. The closing occurred on July 22, 1978.

In October 1978, the Conservation Club brought this action to determine the adverse claims of the parties. After a jury trial, the court made its findings and determinations based on the special verdict answers. Plaintiff was awarded all rights to "Mill Tract."[1] Defendants and fourth-party plaintiffs Sandra and Randy Sackett were awarded a judgment against Richard Sackett and the Coon Club in the amount of

$5,300 plus interest. Defendants and third-party plaintiffs Virgil and Lorraine Chilson and Norman Jackson were held entitled to judgment against Sandra and Randy Sackett in the sum of $8,000 with interest. The trial court denied defendants' motion for amended findings or, in the alternative, a new trial. This appeal followed.[2]

1. The trial court determined that the conveyance to the Coon Club from Plevke was void for failure to have the approval of the board of directors or the membership of the corporation. It decided that Plevke did not have the authority of the Conservation Club to sell the property. The court found that the Conservation Club was not estopped from denying Plevke's authority as a matter of law, since the club had been reasonably diligent in asserting its claim of ownership to the real estate and there had been no detrimental change of position by defendants that would justify invoking estoppel.

Defendants claim that the court erred in ruling that estoppel would not lie against the Conservation Club as a matter of law. They assert that the club had knowledge of the deed and failed to act within a reasonable time to give third parties notice of its claim. It is also their contention that the doctrine of estoppel should be invoked as the third parties have changed their position by purchasing the land. In addition, they conclude that these issues are of a factual nature and should have been considered by a jury rather than decided as a matter of law.

The facts clearly indicate that Wilmar Plevke had no actual authority to convey "Mill Tract" to the Coon Club. Plevke was not an officer of the Conservation Club in spring of 1974. Further, the sale had not been approved by the club's members or board of directors. Since the sale of the club's property would be a transfer of substantially all of the club's assets, the conveyance violated Minn.Stat. § 317.26 (1980),

1. The parties stipulated that title to "School Tract" is properly vested in the Conservation Club.

2. Defendants Randy and Sandra Sackett have voluntarily dismissed their appeal pursuant to Minn.R.Civ.App.P. 142.01.

which requires board or shareholder approval for such action.

The key issue in this case is whether estoppel will bar the Conservation Club from denying the authority of Plevke to convey "Mill Tract." In support of their assertion that the Conservation Club should be estopped, defendants rely on the case of *Macomber v. Kinney*, 114 Minn. 146, 128 N.W. 1001 (1911). In *Macomber*, the record owner was held to be estopped from asserting his rights to the property as against innocent purchasers who took without knowledge of a defect in the title. This court enunciated several principles to be applied in estoppel cases, including the following:

2. To create an estoppel, the conduct of the party need not consist of affirmative actual words. It may consist of silence or a negative omission to speak or act when it was his duty to speak or act.

\* \* \* \*

6. Estoppel can be invoked only by the innocent. Negligence by the party invoking it may deprive him of its protection. The truth must have been unknown to him when he acted.

7. The conduct must have been relied upon by the party misled, and thus relying, he must have been led to act upon it, and he must in fact act upon it in such a manner as to change his position for the worse.

*Id.* at 154–55, 128 N.W. at 1003–04.

Defendants argue that the Conservation Club had an affirmative duty to speak or act in order to give notice to the public that it had a claim to the tract. However, the club was not informed of the defect until October 1976, which was approximately the same time that both quitclaim deeds were recorded. The club's secretary immediately notified Richard Sackett that it had not given Plevke authority to transfer the property. Randy Sackett, the record owner, was also notified after he returned from Alaska in fall of 1977. In addition, the club commenced this action to settle claims to the property approximately 3 months after the conveyance to the Chilsons and Jackson.

Thus, there was not an unreasonable delay on the part of the Conservation Club in asserting its rights and title to "Mill Tract."

■ In accordance with the standards of estoppel adopted in *Macomber*, the party attempting to invoke the doctrine cannot be negligent and cannot have knowledge of the defect in the title. A prospective purchaser of real estate has a duty not only to examine defects in the record chain of title but, also, to discover anyone who is in open possession of land. *Flowers v. Germann*, 211 Minn. 412, 1 N.W.2d 424 (1941). Constructive notice may arise from the presence of structures on the property which indicate the interest of another in the property. *Southwest Pipe Line Co. v. Empire Natural Gas Co.*, 33 F.2d 248 (10th Cir. 1929). Accordingly, a purchaser is bound to inquire into the nature and extent of an occupant's interest. *Konantz v. Stein*, 283 Minn. 33, 167 N.W.2d 1 (1969). Possession will serve as notice to a purchaser of whatever rights the possessor has that would be discoverable upon reasonable inquiry. *Id.*

■ Defendant Lorraine Chilson discovered the utility box and was thus placed on notice of the Conservation Club's interest. She was also informed directly by her attorney that the club had paid the utility bills for the property. She and the other purchasers chose to proceed with the closing despite the risk. Consequently, the Chilsons and Jackson cannot invoke estoppel, since they were negligent in not ascertaining the rights of the Conservation Club and they took with knowledge of the defect in the title.

■ The Coon Club is bound by what a reasonable investigation would have revealed. Every person who undertakes to deal with an agent is put on inquiry and must discover whether the agent has the authority to complete the proposed act. *Mooney v. Jones*, 238 Minn. 1, 54 N.W.2d 763 (1952). Prior to closing, the Coon Club's officers and attorney had in their possession the Conservation Club's corporate records. These records would have indicated that there had not been a meeting

of the members of the board authorizing the conveyance. An examination would have also revealed that Plevke was not the president and did not have the power to sell the club property. The Coon Club was thus placed on inquiry notice as to the claims of the Conservation Club.

■ Another requirement for a party to invoke estoppel is that the party misled must have relied on the conduct of the other party to his detriment. *Macomber v. Kinney*, 114 Minn. at 155, 128 N.W. at 1004. Ordinarily, there must be reliance in good faith upon statements or actions of the party to be estopped. *Harrison v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978). The Chilsons and Jackson knew that they were taking a chance when they purchased the property and, consequently, cannot be said to have relied on the club's conduct. Also, since no agent by his own act can create evidence of authority, the Coon Club cannot claim to have been misled by Plevke's actions. As a result, none of the defendants can rely on estoppel.

It can be determined from the evidence presented that defendants have not met the requisites necessary to invoke estoppel. Accordingly, it was not necessary to submit to the jury the questions regarding whether: (1) the Conservation Club acted with due diligence in asserting its claim; (2) defendants had knowledge of the club's possession of the property; or (3) defendants relied on the club's conduct to their detriment.

■ 2. Defendants further contend that the trial court's findings and conclusion were contrary to the answers given by the jury to the following special verdict questions:

On June 3, 1974, at 8:00 o'clock p. m., meeting in the law office with Attorney Bruce Erickson, Richard Sackett and Larry Narveson, at which Wilmar Plevke was also present, answer these questions:

a. "Did Plevke there say that he was President of the West Concord Conservation Club, Inc.? answer (yes) or (no) YES.

b. "Did Plevke there say that the West Concord Conservation Club, Inc., by a membersip meeting's resolution had authorized the conveyance of the Southern Minnesota Coon Club, Inc.?" answer (yes) or (no) YES.

c. "Did Plevke say that the West Concord Conservation Club, Inc. by a Board of Directors meeting resolution had authorized the conveyance to the Southern Minnesota Coon Club, Inc.?" answer (yes) or (no) YES.

It is defendants' position that the special verdict findings do not support the court's conclusion that Plevke was without authority to convey "Mill Tract." Defendants assert that Plevke was the Conservation Club, for all practical purposes, and they imply that he had the authority to make the conveyance.

The answers to the special verdict questions indicate that the jury decided that Plevke had told Richard Sackett that he was the president of the Conservation Club and that the club had authorized the conveyance. The significance of this determination is that Richard Sackett's conduct could not be considered intentional fraud. The answers did not establish that there was actual authorization for Plevke's acts. There was never any request on behalf of defendants to submit the issue of actual authority to the jury. Since estoppel was denied as a matter of law, this was not considered by the jury in the special verdict. Consequently, it cannot be said that the trial court's decision was inconsistent with the special verdict.

■ 3. Richard Sackett contends that it was error to award judgment against him as well as against the Coon Club. We hold that the trial court did not err in determining that Richard Sackett should be individually liable.

In *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979), this court decided that the defendant was individually liable for judgment entered against a corporation in which he and his wife were sole shareholders. We determined that the

shareholder had failed to make formal distinctions between corporate and individual property and funds. Since the requisite element of injustice or fundamental unfairness was also present, we held that the corporate entity could be disregarded. *Id.* at 512–13.[3]

In this case, Richard Sackett, the Coon Club's sole shareholder, personally received the proceeds from the sale of "Mill Tract" and issued a note, which has not been repaid, to the club. Sackett is in possession of this note and has not, as yet, paid interest on it. The Coon Club had no separate checking account at the time of transfer of the property, and no provision was made for payment of dues. Further, the club is now virtually inactive although it has not been formally dissolved. On these facts, we conclude that Richard Sackett may be held personally liable for the judgment against the Coon Club.

Affirmed.

3. In *G.G.C. Co. v. First Nat'l Bank of St. Paul,* 287 N.W.2d 378 (Minn.1979), this court stated that disregard of the corporate entity is equitable in nature, and generally not available, absent fraud. *Id.* at 384. However, proof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented. *See Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979) (disregard of corporate entity requires an element of injustice or fundamental unfairness); *Erickson-Helleckson-Vye Co. v. A. Wells Co.,* 217 Minn. 361, 380–82, 15 N.W.2d 162, 172–73 (1944) (corporate form disregarded to promote justice and obviate inequitable results); *Prudential Ins. Co. of America v. A. Enkema Holding Co.,* 196 Minn. 154, 158, 264 N.W. 576, 578 (1936) (corporate entity disregarded when it would defeat some strong equitable claim); Note, *Disregard of the Corporate Entity,* 4 Wm. Mitchell L.Rev. 333, 339 (1978).