NORTHWESTERN NATIONAL BANK
OF MINNEAPOLIS, Appellant,

v.

Joseph M. SHUSTER, Respondent.

No. 51648.

Supreme Court of Minnesota.

July 10, 1981.

Rehearing Denied Sept. 4, 1981.

Faegre & Benson, James B. Loken, Brian B. O'Neill and Shelley A. Fitzmaurice, Minneapolis, for appellant.

Maun, Green, Hayes, Simon, Murray & Johanneson and Richard D. Donohoo, St. Paul, for respondent.

WAHL, Justice.

This case involves two notes made by respondent Shuster and given to the McGlynn-Garmaker Company (M-G Co.) as Shuster's alleged capital contributions to the Casper Development Company. The notes were used by M-G Co. as collateral to secure loans from appellant bank for operating capital for the Casper apartment development project and other M-G Co. projects. When M-G Co. went into bankruptcy the bank sued for collection on the notes as a holder and as a secured party with possession. The trial court found that the bank did not have any rights in either note, dismissed the complaint, and awarded respondent attorneys' fees. We affirm in part and reverse in part.

We must decide whether the bank may collect on either or both of the two notes as a holder or as a holder in due course, whether the bank may collect on either or both of the two notes as a secured party, and whether attorneys' fees were properly awarded.

M-G Co., not a party to this action, was a Minnesota corporation devoted to developing real estate. The company was managed and owned entirely by Donald McGlynn and Richard Garmaker and their wives. In June 1972, M-G Co. purchased land in Casper, Wyoming for the purpose of building an apartment project. M-G Co. arranged for financing and began construction in the fall of 1972.

In September 1972, Garmaker met with Richard Schneider, an officer in charge of appellant bank's commercial loans to M-G Co. Garmaker asked for a line of credit, listing among other things in M-G Co.'s financial statement its advances for construction costs on the Casper project and its future income to be received upon completion of the project. Appellant established a $2 million line of credit for M-G Co., personally guaranteed by Garmaker and McGlynn. In drawing on the line of credit, M-G Co. was to deliver a promissory note to appellant, which would deposit funds in the general checking account of M-G Co.

When completed, the Casper project was to be purchased by the Casper Development Company (hereinafter Casper), a Minnesota limited partnership created December 7, 1972, solely "to acquire, operate and manage" the project. Casper's general partners were M-G Co. and Garmaker; its limited

partners were respondent and another individual not a party to this suit. Respondent's initial capital contribution to Casper was a promissory note dated December 7, 1972, for $201,875 secured by 12,000 shares of Beatrice Foods Company stock. The note was made payable to the order of M-G Co. rather than Casper. In the event that Casper required further capitalization, respondent had the right of first refusal, the terms of which are spelled out in an agreement of the same date. The trial court found that appellant "knew all facts" concerning these arrangements.

In January 1973, M-G Co. borrowed on its line of credit $150,000 from appellant and placed the proceeds in M-G Co.'s general checking account. M-G Co.'s promissory note for this loan stated that it was "secured by note from Joseph Shuster." The stated purpose of the note was to "finance real estate development."

M-G Co. delivered Shuster's note to appellant in February 1973. The corporate stock securing Shuster's note was also delivered to appellant. In February 1973, M-G Co. borrowed on its general line of credit another $50,000 from appellant, "secured by Joseph Shuster's note and stock," in order to "purchase real estate." In April 1973, M-G Co. borrowed another $200,000, its note "secured by Notes from Joseph Shuster."

On April 6, 1973, Shuster executed at M-G Co.'s request a document which the trial court called an "option note." The note recites a promise to pay, on June 1, 1974, $201,875 to the order of M-G Co. Shuster added in handwriting beneath his signature the following notation: "This is promised payment for ownership in Casper project [when/if] option is exercised for 2nd half" (the word "when" was written superimposed upon the word "if"). M-G Co. passed this note along to appellant.

When it became apparent that M-G Co. was developing financial trouble, appellant

asked McGlynn to sign a number of assignment-of-bond power forms in blank and to deliver them to appellant. In August 1974, after involuntary bankruptcy adjudications against both McGlynn and Garmaker the preceding month, a bank employee stapled and taped one of these forms to the back of Shuster's first note, dated December 7, 1972. Sometime in mid-1974, Garmaker endorsed the back of Shuster's "option note" dated April 6, 1973.

M-G Co. was later adjudicated bankrupt. The Casper project was never completed by M-G Co. Casper received no interest in the project and has assumed no loan. The trial court found that Shuster had not exercised his option to contribute additional capital to Casper.

We consider first whether appellant should recover on the first note, dated December 7, 1972, as a secured party with possession. The note is a negotiable instrument within the meaning of the Uniform Commercial Code—Commercial Paper.[1] Having received an instrument endorsed to its order, M-G Co. was a holder. Minn.Stat. § 336.1–201(20) (1980).

Shuster signed the instrument and gave it to Garmaker knowing of the operations of M-G Co. and knowing that the note would be used as collateral to fund those operations. Shuster is thus estopped from asserting defenses against M-G Co.'s use of the note in that manner. Moreover, Shuster made the note payable to the order of M-G Co. rather than to the order of Casper, the limited partnership, or to the order of M-G Co. as general partner of Casper. Respondent argues that the bank should assume the risk of ensuring that the note was used as collateral only for loans taken out for partnership purposes. The more reasonable rule under the circumstances of this case would require the maker of the note rather than a third party to bear the risk of

---

1. A negotiable instrument must:

    (a) be signed by the maker or drawer; and
    (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and

    (c) be payable on demand or at a definite time; and
    (d) be payable to order or to bearer.

Minn.Stat. § 336.3–104(1) (1980); J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* 488 (2d ed. 1980).

the note's alleged use for other than partnership purposes, especially when the note is not made payable to that partnership. The general partner of a limited partnership has at least apparent authority to deal with negotiable instruments which are the *property of the limited partnership. See Chemical Bank v. Haskell*, 51 N.Y.2d 85, 411 N.E.2d 1339, 432 N.Y.S.2d 478 (1980).

■ We now turn to appellant's claim of a security interest in the note.

> [A] security interest is not enforceable against the debtor or third parties unless
>
> (a) the collateral is in the possession of the secured party * * *.

Minn.Stat. § 336.9–203(1) (1974). Appellant possesses the note as collateral for the loans advanced, pursuant to the security agreement between appellant and M-G Co., and has an enforceable security interest in the note. Upon default by M-G Co., appellant had the right to proceed directly against respondent on the note. The statutory scheme current at the time of default provided:

> (1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part and except as limited by subsection (3) those provided in the security agreement. He may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. *If the collateral is documents the secured party may proceed* either *as to the documents* or as to the goods covered thereby. A secured party in possession has the rights, remedies, and duties provided in section 336.9–207. The rights and remedies referred to in this subsection are cumulative.

> (2) After default, the debtor has the rights and remedies provided in this part, those provided in the security agreement and those provided in section 336.9–207.

Minn.Stat. § 336.9–501(1) and (2) (1974) (emphasis added). In the absence of a valid defense against collection by appellant or M-G Co., *id.* § 336.9–318(1) appellant, as a secured party, is entitled to collect the unpaid portion[2] of respondent's first note.

In holding that appellant is entitled to collect as a secured party, we need not address appellant's claim that it is entitled to collection as a holder or as a holder in due course, and, specifically, we need not decide whether under the facts of this case the attachment of the assignment-of-bond power form to the back of the note was effective as an allonge endorsement under Minn.Stat. § 336.3–202(2), which provides: "An endorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof."

Respondent argues that his second note, dated April 6, 1973, and delivered first to M-G Co. and then to appellant, is not a negotiable instrument. To be negotiable, a note must "contain an unconditional promise or order to pay." Minn.Stat. § 336.3–104(1)(b) (1980). The question is whether Shuster's handwriting across the bottom of the note "This is promised payment for ownership in Casper project [when/if] option is exercised for 2nd half," makes the promise conditional.[3]

■ In answering that question we look only to the instrument itself and need not at this point determine whether the option was exercised: "The section is intended to make it clear that, so far as

---

**2.** In March 1973, Shuster paid the first installment of $60,000 to M-G Co., as required by the terms of the promissory note. M-G Co. deposited the money into a Casper account, transferred it to M-G Co.'s general checking account, and then paid the money to appellant to reduce the debt under its line of credit.

**3.** The UCC states:

> (1) A promise or order otherwise unconditional is not made conditional by the fact that the instrument

> (a) is subject to implied or constructive conditions; or
>
> (b) states its consideration, whether performed or promised, or the transaction which gave rise to the instrument, or that the promise or order is made or the instrument matures in accordance with or "as per" such transaction * * *.

Minn.Stat. § 336.3–105(1) (1980).

negotiability is affected, the conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself * * *." Comment to UCC § 3–105, 218 Minn.Stat. Ann. 51 (West 1966). A visual inspection by the court of the document in question compels the conclusion that the word "when" is intended to control. In fact, it is impossible to discern that the word "if" is written under the word "when"; all that can be seen is that there is a stroke or two of the pen which does not belong to the word "when." The word "when" is easily discernible, and it would be reasonable for the appellant or any other holder of the note to rely upon respondent's intention that the word "when" control. If the document had said "if option is exercised," we could easily find an express condition. But the language on the face of the note, "when option is exercised," does not create an express condition. "[I]mplications, whether of law or fact, are not to be considered in determining negotiability." UCC § 3–105, Comment, paragraph 1, id. at 51. Paragraph 2 of the Comment explains that language such as "This note is given for payment as per contract * * *" is generally understood as informational and does not establish a condition. Id. A mere recital of the transaction giving rise to the instrument does not affect negotiability. *Heller v. Cuddy*, 172 Minn. 126, 129, 214 N.W. 924, 925 (1927). We find that the handwritten notation on this note does not destroy negotiability.

■ Garmaker endorsed the note, on behalf of M-G Co., to appellant sometime between March and May of 1974. The coincidence of delivery and proper endorsement constitutes negotiation, id. § 336.3–202(1), and establishes in appellant the rights of a holder. A holder must be "in possession of * * * an instrument * * * drawn, issued, or endorsed to him or his order or to bearer or in blank." Id. § 336.1–201(20). A holder may in its own name enforce payment on a note. Id. § 336.3–301. But a holder takes an instrument subject to

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose * * *.

Id. § 336.3–306. Respondent asserted the defense that the note was not a binding obligation because he had not exercised his option to acquire additional ownership in the Casper project. Appellant argues that the evidence shows a chain of circumstances pointing to respondent's probable exercise of the option, for example, the beneficial tax-shelter aspects of investment in the project as shown by the partnership tax return and supporting forms. But appellant does not prove that respondent took advantage of tax losses or that he even saw the partnership tax returns. In light of the conflicting and inconclusive evidence, we decline to upset the finding of the trial court that respondent did not exercise his option to purchase additional ownership in Casper.

■ We now turn to appellant's claim that it is a holder in due course of the second note, a claim that, if established, would allow appellant to take the instrument free from most defenses. Minn.Stat. § 336.3–305 (1980). The UCC provision concerning the procedural order of the shifting burdens of proof in litigation concerning an instrument provides:

After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course.

Id. § 336.3–307(3). Appellant has not overcome its burden of showing that it took the instrument in good faith and without notice of any defense against it, required by § 336.3–302(1). It is evident from inspection of the face of this instrument that appellant took the instrument with full knowledge that the underlying consideration was the future exercise by respondent of his option to purchase additional ownership in the limited partnership. Respondent is not estopped from asserting the defense that he neither exercised the option nor led

appellant reasonably to rely upon his exercise of the option. We find that this defense was established at trial and that it precludes collection on this note as either a holder or a secured party.[4]

We now turn to the trial court's award of attorneys' fees to respondent. Minnesota case law has recognized but has rarely allowed the award of attorneys' fees where an unsuccessful party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fownes v. Hubbard Broadcasting*, 310 Minn. 540, 542, 246 N.W.2d 700, 702 (1976). *Accord, Cherne Industrial v. Grounds & Associate*, 278 N.W.2d 81, 96–97 (Minn.1979). The discussion of attorneys' fees in *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Association*, 294 N.W.2d 297, 311 (Minn.1980), recognized the distinction between "bad faith in litigation and bad faith in the underlying action which is the basis for the suit." That distinction is applicable here and serves to overturn the award of attorneys' fees, since respondent presented no evidence of appellant's bad faith in litigation and appellant has, in fact, prevailed in part.[5]

Affirmed in part, reversed in part, and remanded to the district court for entry of judgment consistent with this opinion.

OTIS, J., took no part in the consideration or decision of this case.

---

4. Appellant's argument that there is no want of consideration assumed that the option was exercised, and addressed only the issue of sufficiency of consideration in the purchase of a business which fails.

5. The award of attorneys' fees is now regulated by statute:

> Upon motion of a party prevailing as to an issue, the court in its discretion may award to that party costs, disbursements, reasonable attorney fees and witness fees relating to the issue if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees are charged acted in bad faith as to that issue. To qualify for an award under this section, a party shall give timely notice of intent to claim an award, which notice shall in any event be given prior to the resolution of the issue. An award under this section shall be without prejudice and as an alternative to any claim for sanctions that may be asserted under the rules of civil procedure.

Minn.Stat. § 549.21 (1980). The statute was "effective April 15, 1978, and appl[ies] to all causes of action arising on or after that date." Ch. 738, § 11, 1978 Minn. Laws 842. The causes of action here arose in 1974, and the statute is therefore not applicable to them.