LYMAN LUMBER
COMPANY, Appellant,

v.

THREE RIVERS COMPANY, et
al., Respondents.

No. C3-86-1270.

Court of Appeals of Minnesota.

Feb. 17, 1987.

David J. Meyers, Brenner, Workinger & Thompson, Minneapolis, for appellant.

Richard W. Schmidt, Jensen, Venne & Schmidt, Anoka, for respondents.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Lyman Lumber Company (Lyman) sued respondent Three Rivers Company (Three Rivers), a Minnesota partnership consisting of Duane R. Jones, Bernard R. Jones and George W. Bunn, for payment of a credit account. The trial court found that Three Rivers was not responsible because Lyman failed to establish that the person using the account was an agent of Three Rivers. Lyman appeals. We affirm.

## FACTS

In the spring of 1983, respondents Duane R. Jones, Bernard R. Jones and George W. Bunn planned to form a partnership known as the Three Rivers Company for home building, remodeling, and other related activities. They applied for a line of credit with Lyman Lumber Company while they were employed as officers of Accent Home and Kitchen Center. Charles Moerke was also employed by Accent. Bunn claims that he notified Lyman in June or July of 1983 that they decided not to form the partnership or go ahead with their new venture.

Moerke then decided to form his own company for building and remodeling and asked respondents if there were any objections to his using the "Three Rivers Company" name for his business. There were

no objections, and in the fall of 1983 Moerke organized a corporation called Three Rivers Company, Inc., with himself as sole director. Between July 1983 and May 15, 1984, Moerke purchased $54,584.89 worth of building materials from Lyman. Lyman charged these materials to the account they had established for respondents following a credit check.

Lyman's previous business dealings with Moerke had not been good and Lyman testified that they would not have extended credit to Moerke. They supplied the material only because they believed it was going to respondents' partnership. When Moerke came to the lumber yard to purchase material he told Lyman's yard supervisor that the materials were for Three Rivers Company. The supervisor checked with Lyman's business office and based on respondents' approved credit application allowed Moerke to make his purchases.

The bills for materials were sent to Accent's address in Anoka, Minnesota and respondents forwarded the bills to Charles Moerke. Respondents claim to have made a phone call to Lyman's and told someone that statements should be sent directly to Moerke. There was no written communication to Lyman from respondents denying responsibility for the statements or correcting the mailing address.

Lyman received payments by checks signed by Moerke as President of Three Rivers Company, Inc. The checks included the corporate name and address of Moerke's company with an address different from that used by respondents on their credit application.

No one at Lyman's sales or credit office ever checked with any of the respondents to see if Moerke was authorized in any way to use respondents' credit account or act as their agent. The Lyman salesman who dealt with Moerke testified that he based his understanding that Moerke was backed by Three Rivers on what Moerke told him. The salesman also relied on Lyman's own credit department which indicated Three Rivers Company had satisfactory credit. At some point Lyman became aware that

Moerke was behind Three Rivers Company and that he was in financial difficulties. They stopped extending credit and attempted to collect the balance of $11,547.02 on the account.

The trial court found that although B. Jones, D. Jones and Bunn never formed a legal partnership, they were partners by estoppel pursuant to Minn.Stat. § 323.15. The court found that Moerke had no apparent authority to act for the partnership. The court also found that respondents did not ratify Moerke's activities and were not estopped from denying he was their agent. No motions for amended findings, conclusions of law or a new trial were made. Judgment was entered in favor of respondents and Lyman appeals.

### ISSUES

1. Did Charles W. Moerke have apparent authority to act as an agent for respondents?

2. Are respondents estopped from denying Moerke's authority?

3. Did respondents ratify Moerke's activities?

### ANALYSIS

#### Scope of Review

In the absence of motions for amended findings or a new trial the scope of review on appeal is limited. The only question is whether the evidence sustains the findings of fact and if the findings of fact support the conclusions of law. *Sauter v. Wasemiller*, 364 N.W.2d 833, 834 (Minn.Ct.App. 1985), *aff'd*, 389 N.W.2d 200 (Minn.1986). Findings of the court will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01; *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980).

#### I.

The sole question is whether Moerke's activities are chargeable to the partnership of B. Jones, D. Jones and Bunn. Lyman seeks to impose liability on the partnership based on an agency relationship. No one argues that Moerke was actually an agent for respondents but Lyman contends that Moerke had apparent authority to act on behalf of respondents.

■ The elements of apparent authority include:

1. A manifestation by the principal that another is his agent;

2. The person who deals with the supposed agent must know of these manifestations at the time of dealing;

3. The manifestation of apparent authority must be by the principal's actions, not the agent's.

*See* Restatement (Second) of Agency § 8 (1958); *Truck Crane Service Co. v. Barr-Nelson, Inc.*, 329 N.W.2d 824, 826 (Minn. 1983); *Hockemeyer v. Pooler*, 268 Minn. 551, 562, 130 N.W.2d 367, 375 (1964).

■ Respondents never made any overt manifestation that Moerke was acting as their agent. Moerke's name was not on the credit application. Moerke was never named by respondents as an agent for them. Lyman's credit supervisor and salesperson both testified that they never received any communication from respondents indicating that Moerke could act as their agent in purchasing materials.

Apparent authority is usually based on an affirmative action of the principal. *Vacura v. Haar's Equipment, Inc.*, 364 N.W.2d 387, 391 (Minn.1985). The court can also find authority "when the agent has regularly exercised some power not expressly given to it and the principal, knowing of the practice, tacitly sanctions its continuance." *Id.* Here, respondents were unaware that the materials Moerke purchased were being charged to their account. One cannot sanction what one does not know.

■ But respondents could be liable as principal for Moerke's conduct if they should have known what was happening. *McGee v. Breezy Point Estates*, 283 Minn. 10, 22, 166 N.W.2d 81, 89 (1969). Lyman suggests respondents should have known because respondents were aware that the account being charged with Moerke's pur-

chases was their account. However, respondents were only aware that Moerke had formed his own Three Rivers Company and could properly assume the bills were for him and merely had been sent to the wrong address. Even though the trial court did find that respondents failed to reasonably notify Lyman that their partnership did not exist, the trial court made no finding that the respondents had knowledge of Moerke's activities and were intentionally silent.

Finally, apparent authority must be founded on the principal's actions, not those of the agent, "since no agent by his own act can create evidence of authority * * *." *West Concord Conservation Club, Inc. v. Chilson,* 306 N.W.2d 893, 897 (Minn.1981). The record indicates that the salesman who dealt with Moerke relied on what Moerke told him and assumed Moerke had authority to charge on the respondents' account.

## II.

Lyman's second theory for establishing liability on the part of respondents is one of estoppel. Estoppel is a principle in the field of tort law developed to prevent losses to an innocent third person. Restatement (Second) of Agency § 8 comment d. Estoppel usually applies when a recognized agent exceeds his or her authority and the principal, either knowingly or negligently, fails to notify the third party. *See Dispatch Printing Co. v. National Bank of Commerce,* 109 Minn. 440, 450, 124 N.W. 236, 240 (1910); Restatement (Second) of Agency § 8B(b). There is no evidence or claim that Moerke was ever actually the agent of respondents or that they ever held him out as their agent. One cannot exceed authority never possessed.

Finally, estoppel can be used only by an innocent party. "Negligence by the party invoking it may deprive him of its protection." *West Concord Conservation Club, Inc.,* 306 N.W.2d at 896. It is well established that one who deals with an agent is under a duty to determine whether the agent has the authority to act. *Truck*

*Crane Service Co.,* 329 N.W.2d at 827. Lyman, given its past bad experience with Moerke, was clearly negligent in not taking any steps to confirm Moerke's authority to charge on respondents' account.

## III.

Lyman's third argument is that respondents ratified Moerke's authority by failing to notify Lyman's that Moerke was not their agent after receiving Lyman's bills at their business address.

> Ratification occurs when one, *having full knowledge of all the material facts,* confirms, approves, or sanctions, by affirmative act or acquiescence, the originally unauthorized act of another, thereby creating an agency relationship and binding the principal by the act of his agent as though that act had been done with prior authority.

*Anderson v. First National Bank of Pine City,* 303 Minn. 408, 410, 228 N.W.2d 257, 259 (1975) (citations omitted; emphasis added). The record shows that respondents did not have knowledge of all the material facts. They did not know that Lyman assumed that Moerke was their agent and they did not know that it was their account which was being charged with Moerke's purchases. They did know that Moerke had incorporated under the name of Three Rivers Company, Inc. and they were not remiss in assuming he would be responsible for his own charges. The record does not support ratification.

## DECISION

The record supports the trial court's finding of fact and the facts support the conclusions of law.

Affirmed.

CRIPPEN, Judge, concurring specially.

In a very credible analysis of apparent authority law, the trial court viewed the topic in two parts. First, the court examined the sufficiency of manifestations by respondents to support the existence of apparent authority. Second, the court con-

sidered whether the manifestations were consequential, that is, whether appellant acted prudently in concluding that Charles Moerke had authority to incur debt for respondents Jones, Jones and Bunn.

This analysis coincides with the rule of law recognized by the supreme court. On the one hand a principal may be bound if it

> acts or conducts his business, either intentionally or through negligence, or fails to disapprove of the agent's acts or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principal * * *.

*McGee v. Breezy Point Estates*, 283 Minn. 10, 22, 166 N.W.2d 81, 89 (1969). Moreover:

> [T]he scope of apparent authority is determined not only by what the principal knows and acquiesces in, but also by what the principal should, in the exercise of ordinary care and prudence, know his agent is doing.

*Id.*

Nevertheless, apparent authority binds the principal only "as to persons who have reasonable grounds to believe that the agent has such authority and in good faith deal with him." *Id.* Justification to assume evident authority exists only for "a person of ordinary prudence." *Id.* at 22, 166 N.W.2d at 90.

Applying these legal principles, the trial court concluded 1) "that Moerke did not have apparent authority" and 2) "that the facts gave [appellant] Lyman sufficient notice that further inquiry should be made into Moerke's authority."

The findings and evidence support the ultimate finding by the trial court that appellant did not reasonably and prudently act on manifestations of Moerke's authority. I disagree, however, with the conclusion that the findings or the evidence support a conclusion that manifestations of Moerke's authority were otherwise inadequate to permit application of apparent authority law for appellant in the circumstances here. I agree with the observation of the trial court that "neither party has acted with business acumen."

At the same time, I do not subscribe to the conclusion of the majority that appellant was "clearly" negligent. I would confine our decision by the scope of our review, deciding only that the trial court did not clearly err in its decision on lack of appellant's prudence.

The fault of appellant is well summarized by the trial court:

(1) Moerke was known to Lyman and credit would not have been extended to him on his own behalf;

(2) The credit application in Lyman's possession did not include Moerke's name;

(3) The phone call from the defendant to plaintiff informing it that they were not going forward with the partnership;

(4) The monthly statements sent out by Lyman were paid by check which bore the corporate name Three Rivers Company, Inc., the corporate address, (which was different from defendants' business address) and were signed by Moerke as president.

On the other hand, I would enlarge on the trial court's view as to manifestations of Moerke's authority by respondents. Absent appellant's imprudence, these manifestations by respondents would justify recognition of Moerke's authority to incur debt chargeable to Jones, Jones and Bunn:

1. Moerke was an agent of an entity, Accent, that was the alter ego of respondents. The three respondents were president, vice-president and secretary of Accent. Appellant knew of this relationship of respondents and Moerke.

2. Respondents represented to appellant that they intended to act not only as Accent but also as Three Rivers Company, which they represented would be a division of Accent. In addition, Jones, Jones and Bunn personally guaranteed to appellant the credit extended to Three Rivers.

3. Respondents expressly and imprudently permitted Moerke to do business as

Three Rivers Company. The trial court found, correctly, that respondents "failed to reasonably notify Lyman that the partnership (Three Rivers), under whose name they applied for credit, was nonexistent." In addition, when respondent Bunn called Lyman in June or July 1983 to say the new venture was being held up, he specifically asked that the Three Rivers credit application be kept on file.

4. Appellant sent monthly bills to Three Rivers at the Accent address. In the words of a trial court finding, supported by the evidence, "the individual defendants [Jones, Jones and Bunn] never informed plaintiff [Lyman] that the statements were to be sent to Moerke, or that Moerke was not authorized to charge on the Three Rivers Company account."

I would affirm on this analysis of the case. Further, as the trial court observed, a proper analysis of apparent authority law is broad enough to make duplicative any further consideration of the case on the basis of sometimes independent principles of estoppel or ratification.