## NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, Appellant,

v.

## Curtis L. SWENSON, Respondent.

### No. C7-87-66.

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Denied Jan. 20, 1988.

James B. Loken, D. Charles Macdonald, Faegre & Benson, Minneapolis, for appellant.

Richard D. Donohoo, Seth Colton, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and MULALLY,* JJ.

## OPINION

LANSING, Judge.

Appellant Northwestern National Bank of Minneapolis (now known as Norwest) brought this collection action on two notes which it held as security for loans made to the McGlynn–Garmaker Company (M–G Co.). The notes were delivered to M–G Co. by respondent Curtis Swenson as his investment in Bountiful Limited Partnership, in which M–G Co. was the general partner. M–G Co. defaulted on the loans, and Norwest attempted to collect on the notes as

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

they became due. Swenson refused to pay, arguing that the proceeds from the loans had not been used by M–G Co. for partnership purposes. The trial court agreed, and Norwest appeals. We affirm.

## FACTS

M–G Co., a bankrupt Minnesota corporation not a party to this action, was a national real estate development company. When a project was sufficiently developed to attract investors, M–G Co. would form limited partnerships to provide investment capital for ownership of the projects. M–G Co. would retain an equity interest as a general partner with overall responsibility for construction and management. M–G Co. was owned and managed by Donald McGlynn and Richard Garmaker and their wives. Curtis Swenson was a personal friend of Garmaker and had invested in several real estate projects through him. Swenson's family members and relatives, including Joseph Shuster, Swenson's brother-in-law, were also investors in some of the same projects.

In June 1973 Garmaker contacted Swenson about investing in Bountiful Limited Partnership, an apartment project in Bountiful, Utah. Swenson agreed to invest and executed and delivered to M–G Co. three promissory notes with a combined value of $118,750. The notes were made payable to M–G Co. Swenson's investment provided him with a 47.5 percent interest in Bountiful. Another investor, Robert Taylor, held a 47.5 percent interest and M–G Co., as general partner, retained a 5 percent interest.

After receiving Swenson's three notes, M–G Co. pledged them to Norwest as collateral to secure specific M–G Co. loans. The notes were not endorsed to Norwest. Although Norwest had opened a separate account for the Bountiful Limited Partnership, it deposited the loan proceeds into M–G Co.'s general checking account.

Swenson paid the first of the three notes when it came due with a check endorsed to Bountiful. M–G Co. then repaid the corresponding portion of its loan obligation to Norwest and Swenson's note was returned to him as paid, leaving the remaining two notes outstanding.

In February 1974 Norwest met with Keith Libbey, an attorney representing Robert Taylor, to discuss the status of two of Taylor's promissory notes payable to M–G Co. which were in Norwest's possession. Each of Taylor's notes was for $118,750, which, together with Swenson's investment in Bountiful, resulted in a 150 percent limited partnership interest. In a meeting on March 4, 1974, Norwest agreed to release the second of Taylor's notes if Swenson would sign a letter stating that he owned a 47.5 percent interest in Bountiful. Libbey testified that after Swenson signed the letter, he explained to Swenson that the letter would be delivered to Norwest. There is no evidence that Swenson knew at that time that Norwest was holding his own notes to M–G Co. Swenson also signed an amendment to the partnership agreement which was delivered to Norwest.

M–G Co. defaulted on the Norwest loans. The Bountiful project was not completed, and Swenson received no interest in it. When M–G Co. defaulted and the remaining notes matured, Norwest demanded that Swenson pay. Swenson refused on the basis that his notes had been used for non-partnership purposes. Norwest brought this action, and the trial court held that Norwest could not recover on the unpaid notes. Norwest appeals.

## ISSUES

1. Is the evidence sufficient to support the trial court's finding that M–G Co. used partnership assets for non-partnership purposes?

2. Is Swenson estopped from asserting defenses to collection of his notes under the reasoning of *Northwestern Bank of Minneapolis v. Shuster*, 307 N.W.2d 767 (Minn.1981)?

## ANALYSIS

It is undisputed that Norwest is a secured party in possession of Swenson's two unpaid notes taken as collateral for con-

temporaneous loans made to M–G Co. The notes made by Swenson are negotiable instruments within the meaning of the Uniform Commercial Code—Commercial Paper. *See* Minn.Stat. § 336.3–104 (1974); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 488 (2d ed. 1980). M–G Co. was a holder, having received an instrument endorsed to its order. *See* Minn.Stat. § 336.1–201(20) (1974). Since there was no endorsement of the notes to Norwest, it is not, and does not claim to be, a holder in due course. *See* Minn.Stat. §§ 336.1–201(20), 336.3–102(1)(e), 336.3–104(2), 336.3–202, 336.3–302 (1974).

When M–G Co. defaulted on its secured loans, Norwest acquired the right to proceed directly against Swenson to enforce his obligations under the notes. *See* Minn. Stat. §§ 336.9–501, 336.9–502. Swenson is then entitled to assert any defenses he might have to collection of the notes. *See.* Minn.Stat. §§ 336.3–306, 336.9–318(1), 336.-3–307(2) (1974).

On appeal Norwest raises only the two issues of whether the evidence supports the trial court's determination that M–G Co. improperly used the loan proceeds for non-partnership purposes and whether Swenson is estopped from asserting this defense under *Shuster.*

## I

■ The trial court found that M–G Co. used its partnership assets for other than partnership purposes. The evidence supports this finding. The loan proceeds were deposited into M–G Co.'s individual operating account, not the Bountiful Limited Partnership account, even though a specific account had been opened for Bountiful at Norwest. The endorsements on the Swenson notes included designations of "working capital" and "Construction Costs on Jupiter Project." The trial court's finding that M–G Co. used Bountiful assets for non-partnership purposes is reasonably supported by the evidence as a whole and will not be set aside. *See Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 726 (Minn.1985).

## II

Norwest alternatively claims that Swenson is estopped from asserting the defense under the authority of *Northwestern Bank of Minneapolis v. Shuster,* 307 N.W.2d 767 (Minn.1981). *Shuster* also involved the M–G Co. and notes made by a limited partner, Shuster, to M–G Co. which were used as collateral to secure bank loans for operating capital on projects other than the limited partnership's. The Minnesota Supreme Court held in *Shuster* that Norwest could collect on the note because Shuster was estopped from asserting defenses against M–G Co.'s use of the Shuster note as collateral to fund its general operation. *Id.* at 769. The court applied estoppel because "Shuster signed the instrument and gave it to Garmaker knowing of the operations of M–G Co. and knowing that the note would be used as collateral to fund those operations." *Id.*

The trial court distinguished *Shuster* in the present case because Swenson had no knowledge of the operations of M–G Co. or that his notes would be pledged as collateral for general operating funds of M–G Co.

■ Norwest argues that Swenson did have knowledge of M–G Co.'s operating procedures and that his notes were being pledged as loans for funds for non-partnership purposes. However, Norwest provides no evidence to support this claim, noting only that Swenson was an experienced investor, that he was once a shareholder in the same partnerships with Garmaker and Shuster, that he shared the same accountant with Shuster, and that he and Shuster were brothers-in-law. Knowledge of M–G Co.'s operating practices cannot be imputed to Swenson based solely on association.

■ Norwest also asserts that Swenson was specifically told that his letter of March 1974 was requested by Norwest as an acknowledgement of Swenson's promissory notes and as a basis to release his partner's note as collateral. However, Swenson testified at trial that he did not

know his notes would be taken by the bank as collateral. The trial court accepted his testimony. In order to overturn a trial court's findings, an appellate court must be left with a definite and firm conviction that a mistake has been made, notwithstanding the evidence to support the findings. *Cherne Industrial, Inc. v. Grounds & Associates,* 278 N.W.2d 81, 88 (Minn.1979). Because there is no competing evidence to support a conclusion that Swenson had knowledge that his notes would be offered as collateral for loans used for non-partnership purposes, the trial court's finding on this fact must be affirmed.

■ Norwest also asserts that Swenson's signing of a negotiable instrument—even without specific knowledge that M–G Co. would use it as collateral—places him on notice that the instrument may be negotiated, and Swenson's endorsing the negotiable instruments payable to M–G Co., rather than directly to Bountiful, gives rise to estoppel under *Shuster.* We read *Shuster* to rest primarily on the defendant's knowledge that his notes would be used as collateral for loans which would be used for non-partnership purposes. Swenson did not have similar knowledge.

■ Additionally, estoppel is rightfully available only to an innocent party. *See West Concord Conservation Club, Inc. v. Chilson,* 306 N.W.2d 893, 896 (Minn.1981) (estoppel can be invoked only by the innocent; the truth must not be known to him when he acted; the conduct must have been relied upon by the party misled). Norwest knew of the operating procedures of M–G Co. Norwest's chief credit officer testified that the bank knew that Swenson, as a limited partner, was investing in the limited partnership and not in M–G Co. Although it set up an account for the limited partnership which was separate from M–G Co.'s account, funds from partnership assets were placed not in the limited partnership account, but in M–G Co.'s general operating account. The bank's own knowledge weighs against its claim of estoppel. *See id.*

**DECISION**

Affirmed.